In the Matter of the Judicial Settlement of the Accounts of JOHN J. JONES et al., Executors, etc.

The will of J. authorized his executors to continue his business for such time after his death as they should think advantageous to the estate, and directed as to the distribution of the profits. His residuary estate he gave to his executors in trust to collect rents and interest, and after paying therefrom necessary expenses and charges, to pay the "residue and net proceeds" to certain *cestuis que trust*, during their lives. Upon settlement of the accounts of the executors, *held*, that losses by bad debts, and the cost of personal property purchased to replace similar articles worn out or used up in conducting the business by the executors; also expenditures for ordinary repairs on the real estate used therefor, were properly charged against and deducted from the income payable to

the life-tenants ; that the language of the will authorized the deduction of all losses and expenses necessarily incurred in managing the estate and conducting the business, including ordinary expenses for repairs or improvements, and it was not necessary that the specific items so to be deducted should be stated in the will.

*It seems* the same rule might not apply where a large and unusual expenditure has been incurred ; as in the erection of additional buildings.

(Argued November 30, 1886; decided December 17, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made September 22, 1885, which affirmed a decree of the surrogate of the county of Westchester, settling the accounts of the executors of the will of David Jones, deceased.

The facts, so far as material, are stated in the opinion.

*Luther R. Marsh* for appellant. The word " profits " is defined as the gain which is made upon any business when both receipts and payments are taken into account. (*People v. Suprs.*, 4 Hill, 23.) The executor's account is erroneous in charging against income all expenditures for worn-out machinery, horses, wagons and other personal property. (Webster's Dict.; *R. Co.* v. *Pittsburgh*, 80 Penn. St. 76.)

*Martin J. Keogh* for respondents. The charges for personal property worn out and destroyed in carrying on the business, and for necessary repairs to real estate, were properly deducted from the income. (*Ex parte Richardson*, 3 Mad. 183 ; *Ex parte Garland*, 11 Ves. 109–119.)

MILLER, J. The questions in this case arose on the final accounting of the testator's executors before the surrogate of Westchester county, and affect the construction to be placed upon portions of his will.

The testator before his death was extensively engaged in the business of brewing ale and beer in the city of New York and vicinity, and by his will authorized and empowered his executors to continue his business for such time after his decease as

they should think most advantageous to his estate, and he gave directions as to the management thereof, and the distribution of the profits arising from the same.   He then made provisions for the division of the whole of his estate into five equal shares, and disposed of them substantially alike by separate provisions in regard thereto, one of which is as follows : " I give, devise and bequeath to Wilson G. Hunt, Martin Blydenburgh, Alexander Thayer and John J. Jones, executors of and trustees under this my will, one equal fifth part of all my estate, real and personal, after payment of debts and funeral expenses as aforesaid, to have and to hold the same, to them, the survivors and survivor of them, for and during the life of my sister, Margaret Jones; in trust, nevertheless, to take possession of the real estate, keep the same in proper and suitable repair, keep the buildings thereon well insured, and to let or lease the same from time to time, and for such term of time, within the lifetime of my said sister Margaret, as to them may seem best, and for the best rent that can be obtained therefor ; to keep the personal estate safely and securely invested, and to collect the rents and profits of the real estate, the interest, dividends and income of the personal estate, and after paying the taxes and assessments, expenses of repairs and insurance, and all other legal and necessary charges and expenses, pay over the residue or net proceeds of said one-fifth part of my estate, so given to them in trust as last aforesaid, to my said sister Margaret, semi-annually, during her life."

Under the provisions of the will the executors for a number of years continued to carry on the business in accordance therewith.   They sold the beer manufactured to purchasers on credit, as they had authority to do by the will, and a considerable amount of the credits created became uncollectible, and were lost to the estate.   In the account filed by the executors these losses were charged against the income of the life-tenants, and deducted from the same.   Various appliances and articles which had been worn out in the conduct of the business, as well as horses which had died, were replaced by the executors, and the amount paid therefor charged against the life-tenants.

Certain items for repairs were also charged against the life-tenants. All of the charges enumerated were allowed by the surrogate upon the accounting. These allowances present the question, whether, under the will, they were proper charges against the income, and whether the executors have complied with the intention of the testator in reference thereto.

The testator, after vesting authority in his executors to hold in trust his real estate for the purpose named, and for collecting the rents and profits of the real estate, the interest, dividends and income of the personal estate, and the payment of all legal charges and expenses, provides for the payment of the residue or net proceeds as directed in the clause cited. By the terms " residue or net proceeds " the testator evidently intended to dispose of such portion of the income as should remain after making proper and legitimate deductions for expenses and losses incurred in the management of the estate, and in the conduct of the business which was intrusted to their charge. Any money, therefore, which might be paid out in the course of the business, which was essential to carry it on, would be a necessary and proper charge against the income and profits in determining what amount of the residue or net proceeds remained for distribution among the legatees.

It would be very difficult to draw a dividing line by which it could be determined that a certain portion of the expenses incurred and disbursements made in the transaction of business should be made or charged against the capital employed, and another portion against the profits or income. While a case might arise where a large expenditure, as, for instance, the erection of additional buildings, might be such an improvement of the real estate as to become an addition to the capital employed, yet ordinary expenditures for repairs or improvement would not be embraced within any such rule. So, also, in reference to the wearing out, loss of or depreciation of personal property, it cannot well be claimed that moneys expended to replace the same should not be deducted from the income received or profits realized.

It was not necessary, we think, that the testator should have

expressed in his will in more specific terms, what items should be deducted, and he evidently meant by the language employed to include all losses and all expenses which were necessarily incurred in the management of the estate and the conduct of the business.

It can hardly be supposed that the testator intended that a division should be made of profits realized from the business without deducting expenses and losses. Such a disposition of the income received would not constitute a division of the " residue," as the amount would be greater than what actually remained. There would, in fact, be no such profits or balance on hand to be divided. The expenditure would have been made without any provision for its payment or reimbursement, and the value of the investment in the business very seriously impaired. The effect of charging any of the expenses which related to the business upon the principal of the estate would be a serious impairment of the capital employed in the business, which might in the end absorb the same and thus destroy all income arising therefrom.

It is no answer to this view of the subject to say that under the will the business is only to be conducted so long as in the opinion of the executors it shall be to the advantage of the estate to carry it on, as clearly it could never have been intended that the conduct of the business should deplete the estate by dividing its capital to make good the expenses and losses referred to. Nor can it well be said that the losses were to be apportioned between principal and income as it might be determined, as it is nowhere manifest that the testator's intention was that the devisees should not only receive the income but a portion of the principal. It would require a close calculation to determine what apportionment should be made as to a portion of the losses incurred, and it is not fairly to be inferred that the testator intended that any such degree of exactitude should be required.

The provision under the will authorizing the executors to discontinue the business when it was no longer advantageous to continue it, bears strong indication of the intention of the

testator that when the body of the estate fails to yield a sufficient income, after making proper deductions, then the occasion arrived as mentioned in the will when it became the duty of the executors to discontinue the business.

The order of the General Term, affirming the decree of the surrogate, should be affirmed, with costs.

. All concur.

Order affirmed.