2. The most important question arises under the following facts: A bond and mortgage had been executed by Louisa Uhl to the decedent and his wife. The decedent died before his wife, and the point to be decided is whether or not the bond and mortgage became the property of the wife on the death of her husband by right of survivorship, or whether the estate of the husband was entitled to some portion thereof. The objectors concede that in the case of real property, in case of a transfer of this kind, the right of survivorship would exist, but claim that a different rule prevails with respect to personal property. The referee held that there was no difference and cites authorities to sustain his position. The case of *Bertles* v. *Nunan*, 92 N. Y. 152, proceeded on the theory that the statutes enlarging the powers of married women with reference to property rights, being in derogation of the common law, must be strictly construed, and that these statutes did not abrogate the common-law rule that a conveyance to husband and wife created an estate by the entirety, with the right of survivorship as an incident of that quality of title. The common-law rule as to the right of survivorship was based upon the unity of husband and wife, and a conveyance in the joint names of husband and wife was presumed to be a gift and advancement to the wife by the husband, unless evidence of a different intention was adduced. That the case of *Bertles* v. *Nunan*, *supra*, is an authority as to the continuance of the common-law rule with respect to personal property as well as real estate is apparent from the language of the court, who say: "The claim is made that the legislature referred to and destroyed the common-law unity of husband and wife, and made them substantially separate persons for all purposes. We are of the opinion that the statutes have not gone so far." Again, the court say: "The statutes had in view the enjoyment of that which is hers, not the force and effect of the instrument by which an estate may be granted to her." *In re Brooks*, 5 Dem. Sur. 326; *Orphan Asylum* v. *Strain*, 2 Bradf. Sur. 37; *Platt* v. *Grubb*, 1 N. Y. St. Rep. 494; *Sanford* v. *Sanford*, 45 N. Y. 723, 58 N. Y. 72. The exceptions to the report of the referee are overruled, and the report confirmed.

---

## *In re* ODELL'S ESTATE.

*(Surrogate's Court, New York County.  November 17, 1888.)*

1. TRUSTS—POWERS OF TRUSTEES—REPAIRS.
    While a trustee has no power to make improvements on the trust property, he may, at the expense of the estate, cause necessary repairs to the buildings to be made, though improvements incidentally result.

2. SAME—POWER TO LEASE.
    Trustees having power to pay debts, etc., out of the estate, but none to sell, have an implied power to lease the real estate upon terms usual to such property in the locality where it is situated.

3. REFERENCE—WEIGHT OF REFEREE'S FINDINGS.
    The findings of a referee appointed by a surrogate, upon questions of fact, will not be set aside by the surrogate, unless opposed by such a weight of evidence that it can be said that they are without evidence.

On exceptions to referee's report.

Accounting of the trustee under the will of Lawrence Odell, deceased. For opinion on a former hearing, see 2 N. Y. Supp. 752.

*Billings & Cardoza*, for exceptant.  *Jacob Framme*, for trustee.

RANSOM, S. I have decided that a referee appointed by this court has all the powers and duties in the proceeding of the surrogate. *Estate of Williams*, 7 Sur. Dec. 309. This construction of the statute has also been given by the general term of the Second department. *In re Niles*, 47 Hun, 348. I have also held that I shall not disturb the findings of fact of a referee, where there was a conflict of evidence, unless the finding is clearly against the weight

of evidence, or has none at all to support it. *Estate of Bradley*, 7 Sur. Dec. 296; *Estate of Smith*, Id. 293. The plain intent of the legislature was to cast upon the referee judicial powers and responsibilities, and thus relieve the surrogate from any duty in the proceeding except to review his conclusions of law from facts established by the evidence. It was not contemplated that the referee should be an assistant to the surrogate, acting simply ministerially. The referee's findings of fact should be regarded as the verdict of a jury, and, unless clearly against the weight of evidence so as to amount to a finding without evidence, should be sustained. This proceeding furnishes a fair sample of a controversy over naked questions of fact. I am expected, evidently, by the exceptant to consider all the testimony *pro* and *con*, quite independent of the referee, who saw the living witnesses, and heard them testify, and decide from it upon the merits of the controversy. It is clear to me that this would be a very unwise and unjust course to pursue, and would, in effect, completely nullify the statute authorizing the reference. No suggestion is made by counsel for exceptant that the referee has found a fact without any evidence to support it, or without sufficient evidence to support it. He insists, on the only important question involved, that the work done on the houses was improvement, not repair. The nature of the work done was testified to, and is not contradicted. The extent of the work is not disputed; the necessity of the work is not denied by any testimony on the part of the exceptant. Just what the exceptant expects from me on this point is difficult to see, unless it is that I shall disregard the testimony of many expert witnesses called by the trustees, all of whom agree that the work was needed to repair the houses. I cannot lawfully do this. It does not belong to me to disregard the testimony of a carpenter or other mechanic to the effect that certain work done was needed as repairs to a dilapidated building, because it follows that such repairs are, as a matter of fact, an improvement to the building. All repairs are, in a way, improvements; but they are not such improvements as trustees are prohibited from making. On the contrary, they are, in this case, such repairs, although effecting some or much improvement, which are within the plain duty of the trustees to make in the proper discharge of their trust. No evidence was given by the exceptant that these repairs were extravagant, but the trustees multiplied witnesses on the point that they were economical, and established that fact beyond cavil. Nevertheless, the exceptant insists that I should set aside the referee's finding of that fact. The reason given is that the work done is an improvement, and not a repair. I am referred to no case, nor to any elementary authority, nor do I know of either, for this view. The conclusions of the referee could not have been other than they are. I agree with him entirely. If the facts are really as contended for by the exceptant, surely witnesses could have been found to prove them.

It is elementary doctrine that trustees may make necessary repairs, but not large improvements. 2 Perry, Trusts, § 526. Also that the trustees holding for the life of one person and remainder over for some other person must consult the interest of both tenant for life and the remainder-man. He must act impartially, and not give either advantage at the expense or to the prejudice of the other. Id. § 539. I assume that the exceptant tried this case before the referee with these principles in mind. Their application depends entirely on the facts in the case. In this case, as I have already remarked, the referee, an able, careful lawyer, on evidence ample for the purpose, has found in favor of the trustee, and I see no valid ground for overruling his decision.

Some point is evidently intended to be made by the exceptant as to the action of the trustees in leasing the houses, a part of the trust-estate, repairs thereto, and conditions of letting, etc. The law is that trustees having power to pay debts or legacies, or any other sums, out of the estate, but no power of

sale, have an implied power of leasing upon ordinary terms or customs of the state or town in which the land is situated.  *Newcomb* v. *Ketteltas,* 19 Barb. 608; *Hedges* v. *Riker,* 5 Johns. Ch. 163.  If the property is houses in a city, they can grant ordinary leases.  *Greason* v. *Keteltas,* 17 N. Y. 491.  The report of the referee is confirmed.

---

### *In re* WALLACE'S ESTATE.

#### (*Surrogate's Court, New York County.*  October 12, 1888.)

DESCENT AND DISTRIBUTION—LEGACY TAX.

    Where property held in trust, under a will, for a life in being, is to be divided, on the death of the *cestui que trust,* among such of certain heirs as survive the life-tenant, their interests in the property passing under the will on the death of the testator are so indefinite and contingent that the property should not be appraised and reported for a legacy tax until the contingency happens, and the interests and number of the collateral heirs can be exactly determined.

Motion to confirm report of appraiser of the estate of Benjamin Wallace.

*Graham McAdam,* for comptroller.  *Varnum & Harrison,* for executors. *R. L. Sweezy,* special guardian, for Wallace White.

RANSOM, S.  In this case the appraiser reports that there are certain items and interests in property passing under said will which cannot be appraised by reason of their indefinite, uncertain, and contingent character, and says they are not, in his opinion, subject to taxation.  These are—*First,* the principal of the fund of $7,000 held in trust for Ann Irving, as it is impossible to determine, prior to her death, whether said remainder is taxable either in whole or in part, or not at all, it being entirely contingent upon whether Ann Irving leaves issue living, or, if not, what, if any, of the residuary legatees under the will of the testator may survive her; *second,* whether the principal of the fund, amounting to one-fourth of the residuary estate, to be held in trust under said will during the life-time of his sister Sarah, is subject to taxation or not, it being wholly contingent upon whether said Sarah leaves issue living at her death, or whether testator's sister Ann, the remainder-man as to this fund, should survive; and, *third,* whether the principal of the fund, amounting to one-fourth of the residuary estate, to be held in trust under said will during the life-time of the testator's sister Ann White, is taxable or not, cannot now be determined, it being wholly contingent upon whether the said Ann White shall leave issue living at her death.  The comptroller objects to these findings—*First,* upon the ground that the statute makes express provision for the taxation of such estates as this, *i. e.,* estates in remainder passing to collateral heirs upon the expiration of life-estates vested by the will in the sisters; *second,* that the appraiser errs in saying the interests cannot be appraised because of their indefinite, uncertain, and contingent character; and in saying that the question whether any tax is to become due or not depends upon the contingency of the death of sister Ann before that of sister Sarah in the one case, and of the death of sister Sarah before that of sister Ann in the other case; and claims that the appraiser should be directed to obtain the valuation of the estate in remainder going to collateral heirs as dependent on two lives in being, in the manner prescribed by the act, upon the ground that the estates given to the sisters are not taxed, but that the taxable interests are those going to collateral heirs, and that "there is in each case an estate in remainder positively set apart for collateral heirs," "and that the death of both sisters is a certainty, and, upon the death of both, both life-estates cease, and the property goes to collateral heirs of the testator, and that the minimum of such collateral estate is susceptible of exact valuation;" and asks that the appraiser be directed to amend his report accordingly.  The report should be referred back to the appraiser, because he has reported certain legacies which are exempt, and then exempted them.  I find that the interests of the collat-

v.4N.Y.S.no.6—30