1. EXECUTORS—SETTLEMENT OF ACCOUNTS—RENT OF REALTY.

The widow and executrix, after testator's death, continued to occupy the same apartments, in a tenement belonging to the estate, that were previously occupied by the family, under an agreement with the executors that she might do so free of rent, and perform the services of housekeeper and janitor of the premises in consideration thereof. It appeared that such services were necessary, and it was the custom for the housekeeper to occupy an apartment free, in addition to wages. *Held*, that the executors were not chargeable in the accounting with rent for the apartments occupied by the widow.

2. WILL—CONSTRUCTION—VESTED REMAINDER.

Testator give his wife certain property, and the residue of the estate to executors in trust, to pay his wife one third of the net income quarterly, to pay $1,000 on a certain mortgage each year, and "to pay over, distribute, and divide all the rest and residue of the said income to and among my children, share and share alike, in equal quarterly payments; and, in case of the death of any of my children leaving issue, I direct that the said issue shall take and receive the share the parent would have received if living;" and, on the youngest child attaining the age of 25 years, if said wife shall not then be living, and, if living, then on her death, "to sell and convert my said estate into cash, and pay over and distribute and divide the proceeds thereof to and among my children, share and share alike; the issue of any deceased child to take the share the parent would have taken if living." He also directed that, in case his son should desire to go into business before becoming 25 years of age, his executors might in their discretion advance to him, "upon his share in my estate," such sum as to them seemed proper. After testator's death a married daughter died, leaving a child, who afterwards died, leaving his father as his only heir and next of kin. *Held*, that the share of each child vested on testator's death, and the husband of the daughter, on the death of his wife and child, was entitled to future income, and to share in the residuary estate at the expiration of the trust.

3. EXECUTORS—INTEREST ON ESTATE FUNDS—RATES.

Where it is agreed by executors and an objectant to their account "that the executors shall be charged with interest on all unexpended balances," the interest is chargeable at the legal rate, though the executors may have the money deposited at a lower rate.

Proceeding for the judicial settlement of the account of Agnes Meikle, executrix, and John S. Gilmore and William S. Ford, executors, of the will of William Meikle, deceased.

*Maclay & Forrest*, for executrix and executors. *Francis W. Judge, Jr.*, for Bella Malcolm, contestant. *Geo. W. Carr*, for Thomas A. McEwen, contestant.

RANSOM, S. The first question raised by the exceptions to the referee's report arises upon the following state of facts: Prior to his death the decedent occupied apartments in one of the tenement houses of which he was the owner, together with his wife and other members of his family. The members of his household discharged the duties of janitor and housekeeper on the premises. After his death his widow, who was one of the accounting parties, continued to occupy the same apartments, and performed the duties of housekeeper and janitor. Objection was made to the accounts because the executors and executrix failed to charge themselves with the rental of the premises so occupied by the widow, who is likewise executrix. The referee finds that it was necessary in property of this character to have a resident janitor and housekeeper to care for the property, and that it was customary to permit such housekeeper to occupy an apartment free of rent, in addition to paying wages at the rate of $30 a month. Within three months after the death of the testator the executrix (the widow) and the executors agreed that the former should perform the duties of housekeeper and janitor without compensation, but with the right to occupy the apartments free of rent. This exception is overruled.

The important question is as to the construction of the will of the testator. After giving to his wife certain specified property, he gives all the residue of his estate, both real and personal, to his executors and executrix in trust, "to pay over to my said wife the one third part of the net income arising therefrom in equal quarterly payments; to pay out of the remaining income in each and every year, upon the mortgage now on my Forty-First street property, the sum of $1,000, or so much thereof as, in the opinion of my said executrix and executors, or the majority of them, my estate can afford; to pay over, distribute, and divide all the rest and residue of the said income to and among my children, share and share alike, in equal quarterly payments; and, in case of the death of any of my children leaving issue, I direct that the said issue shall take and receive the share the parent would have received if living. On my youngest child attaining the age of 25 years, if my said wife shall not then be living, and in case my said wife is living at that time, then upon her death, to sell and convert my said estate into cash, and to pay over and distribute and divide the proceeds thereof to and among my children, share and share alike, the issue of any deceased child to take the share the parent would have taken if living. In case my son shall desire to go into business before attaining 25 years of age, my executrix and executors may, in their discretion, advance to him, upon his share in my estate, such sum as to them may seem meet and proper." Subsequent to the death of the testator, one of his children, Mary McEwen, who had married during his lifetime, died, leaving, her surviving, a child, who has since died in this state, leaving, as his only heir and next of kin, his father. It is not disputed but that Thomas A. McEwen, the husband of the deceased daughter, as the administrator of his wife, is entitled to receive whatever income became due and payable to her before her death, or that he is not entitled to whatever income became due and payable to his son before the latter's death. The question to be determined is as to the rights of Mr. McEwen to future income, and whether or not he became entitled on the death of his wife and son to their share in the residuary estate of the testator. If each child, or the issue of a deceased child, took on the testator's death a vested estate in an undivided one fourth part of his property, descendible on the death of any child to its heirs or next of kin, then Mr. McEwen is entitled to future income, and to share in the residuary estate at the expiration of the trust. If, on the other hand, the gift of the testator's estate was to his children, or the issue of any deceased child who survived the trust term,—that is to say, if the gift was future and contingent, —then the report of the referee is correct. A very learned note on the subject of the vesting of estates will be found appended to the report of the case of *Delafield* v. *Shipman*, 9 N. E. Rep. 184. I deem the recent decision in *Goebel* v. *Wolf*, 113 N. Y. 405, 21 N. E. Rep. 388, (decided in April, 1889,) as controlling in this case. That was an action for the construction of the will of decedent, who died leaving a widow and four children, one of whom had since died, surviving him. The question arose upon the residuary clause of the will, which devised the residuary estate to trustees, who were to collect the income and pay all charges; to pay one half of the net income to his wife for the support of herself and minor children; to apply the other half to mortgages, and other liens upon real estate; after the mortgages were discharged, that one half was to be invested in real estate for the benefit of the children; to carry on business until his youngest child arrived at majority, with certain conditions; to invest the net profits of said business, after deducting compensation to the trustees for their services upon real estate, etc., all other personal property to be invested for the children; to pay each of the children as they arrived at majority or marry $3,000; upon the arrival of the youngest child at 21 years of age, in case the wife was not then living, to divide all the estate and accumulations among his children "share and share alike, after deducting all advances made, as above provided, to any of my children, so

that each of my children shall have and receive an equal share of my estate. Should my wife be living at the time my youngest child arrives at the age of 21 years, that it is my wish and pleasure that no division of my estate shall be made until after the death of my said wife." It was held that each child took a vested remainder in one fourth of the residuary estate, dependent upon the termination of the trust, and the share of the one who died descended to his heirs or next of kin, according to the nature of the property, and that such descendants were entitled to any income that may hereafter accrue during the trust period. The features in which that case resembles the one at bar are apparent.

As I read the will in the case at bar, the intentions of the testator are well defined. His first desire was to provide for his widow during her life out of income, then for the discharge of the mortgage out of income, if it could be done, and then all the residue of income for his children equally. But the principal was not to be divided and distributed until his youngest child, the only male, had reached the age of 25 years, if his widow was then dead, or at her death. He desired, however, that this restriction should not prevent his son's entering into business life before that time, and he therefore provided that the executors might make advances to him for that purpose "upon his share in my estate, such sum as to them may seem meet and proper." "It is a general rule that a postponement of the time of payment will not, of itself, make a legacy contingent, unless it be annexed to the substance of the gift; or, as it is sometimes put, unless it be upon an event of such a nature that it is to be presumed that the testator meant to make no gift unless that event happened." *Loder* v. *Hatfield,* 71 N. Y. 98. No such presumption could arise here, for the event was certain to happen, and such a presumption is conclusively negatived by the provision for an advancement to the son. This last provision is significant. The fact that an advancement was authorized to be made to a beneficiary before the period fixed for the division has been considered as proof of an intent by the testator that the shares should vest in the beneficiaries at his death. *Goebel* v. *Wolf, supra; Everitt* v. *Everitt,* 29 N. Y. 69.

It seems clear that the testator intended that each of his children should have a share in his estate, payable at a future time, but in the interim, for the trust term, income or interest should be paid to them quarterly. This has been held to be "indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait only for payment until the day fixed." *Wagner* v. *Durant,* 76 N. Y. 133; *Smith* v. *Edwards,* 88 N. Y. 92; *Manice* v. *Manice,* 43 N. Y. 369. Much stress is laid upon the principle that in a controversy between the heir and a stranger the claim of the heir has the advantage. If there be two equally probable interpretations of the will, the one should be adopted which prefers the blood of the testator. *Quinn* v. *Hardenbrook,* 54 N. Y. 83, and other authorities cited on the briefs of the learned counsel for the executors and for Bella Malcolm. Such is the law, but I am unable to perceive its application here. To my mind, we are not driven to the consideration of probable interpretation. We have a perfect certainty of the meaning and intent of the testator.

There is also another well-settled principle which may be appropriately resorted to in this case, and which, it seems to me, fully justifies the interpretation I have given to this will, viz., a construction which leans to the vesting of legacies must always be encouraged, and we must seek diligently for evidences of such purpose and intention, and we must not make the will "over to suit our own notions of what might have been wisest." (Judge FINCH, in *Smith* v. *Edwards,* 88 N. Y. 109.) I have thus reached a conclusion adverse to that of the learned referee, and must therefore sustain the exceptions to his conclusions of law as to the rights of Mr. McEwen.

Another question must be disposed of which it seems to me ought not to be

here. The record shows a stipulation in open court before the referee, by counsel representing the executors and the objectant, "that the executor shall be charged with interest on all unexpended balances," to be charged quarterly. On this stipulation, the learned referee charged $3\frac{1}{2}$ per cent. This was error. The plain meaning of the stipulation is that such interest should be at the legal rate. The fact that the executors deposited the moneys of the estate in a savings bank which allowed them but $3\frac{1}{2}$ per cent. does not necessarily relieve them from liability for interest at the legal rate. The objectant should have an opportunity to introduce proof on the point, which of course may be met by the executors. To the extent of $3\frac{1}{2}$ per cent., at least, they are clearly liable to be reckoned at quarterly periods. Upon this question alone, this proceeding must go back to the referee.

In all respects, except as herein indicated, the report of the referee is confirmed.