(17 Misc. Rep. 680.)

In re CORNELL'S ESTATE.

(Surrogate's Court, Ulster County.   July, 1896.)

1. WILLS—INSTRUCTION—NET INCOME.
     Testator devised his estate to his executors in trust to manage, to collect all moneys, rents, and profits, and to do all acts as testator might have done if living. He also directed the executors, out of the income of the estate, to keep the homestead in repair, and to pay all assessments, taxes, and insurance thereon; to pay to the widow 90 per cent. of the "net income" of the estate, and authorized them to employ servants and agents, to be compensated from any funds of the estate, in the discretion of the executors. *Held*, that by "net income" testator meant the income which should be left after payment of all ordinary and proper expenses of conducting and preserving the estate, including repair of building, taxes, and compensation of employés of the estate.

2. TRUSTS—COMPENSATION OF TRUSTEES.
     A sum which the beneficiaries of an estate agree shall be paid to the trustees in addition to their commissions is chargeable against the income of the estate alone, though the remainder-men, as well as the life beneficiaries, are benefited by such services.

3. SAME—EFFECT OF AGREEMENT.
     An agreement by testator's widow, to whom testator bequeathed a share of his income of the estate, that the trustee should receive a certain sum for his services, in addition to his commission, is not an equitable assignment by her of a portion of the rents and profits of the trust.

4. SAME—PAYMENTS FROM INCOME OF THE ESTATE—TAXES.
     Taxes on property devised in trust, accruing during the lifetime of testator, are chargeable against the principal of the estate, and not against the income.

**5. SAME—ASSESSMENTS.**
> Street-paving assessments against real estate devised in trust are chargeable against the principal of the estate, and not against the income.

**6. SAME—COSTS OF LITIGATION.**
> A bill of costs against an executor, in an action by him to recover possession of property which was in the possession of a third person at the time of testator's death, is one of the expenses incident to ascertaining the amount of the estate, and therefore is chargeable against the principal of the estate, on an accounting by the executor as testamentary trustee.

Judicial settlement of the accounts of Horace G. Young as trustee under the will of Thomas Cornell, deceased.

H. C. Soop, for Horace G. Young, trustee.

A. T. Clearwater, for Mary Augusta Coykendall, Thomas Cornell Coykendall, Harry S. Coykendall, and Edward Coykendall, and for S. D. Coykendall, as general guardian, and as special guardian for Katharine Coykendall, Robert B. Coykendall, Frederick Coykendall, and Frank Coykendall.

Cardozo Bros., for Catharine Ann Cornell and Nellie L. Carpenter.

BETTS, S. This is an intermediate accounting of Horace G. Young as testamentary trustee under the last will and testament of Thomas Cornell. Objections are filed by Catharine Ann Cornell, the present life legatee of a portion of the net income and remainder-man, and by Nellie L. Carpenter, a contingent life legatee and remainder-man, to certain items contained in the account and two supplemental accounts filed on this hearing. The trustee renders his account in two schedules,—one of principal account, and the other of income account,—and the objections filed are to the general effect that the trustee has charged to income account certain items which should be wholly charged to principal account, or apportioned between principal and income accounts. It is a question, in the main, from which fund certain payments shall be made.

The will of Thomas Cornell, so far as necessary to dispose of the questions presented on this accounting, provides, after a direction to his executors to pay his debts and funeral expenses, and to erect or complete a mausoleum, as follows:

"Third. All the rest, residue, and remainder of my said estate, real, personal and mixed, of every name or nature whatsover, I give, devise, and bequeath unto my executors and trustees hereinafter named, and to their successors, with full power to sell all or any part of my said estate, as they may deem advisable, from time to time, at either public or private sale, and upon such terms as they shall deem proper, and to invest and reinvest the proceeds from such sales or any moneys that may come into their hands as they think best, without regard to any statute or law regulating such investments, and without any personal liability of either of my said executors, or their successors, or any such action, or for any loss or depreciation my said estate may suffer because of such investment; to be held by my said executors, and their successors in trust, for the following purposes and uses only, to wit: (1) To manage, improve, protect, and care for my said estate; to collect all rents, moneys, interest, dividends, and profits my said estate may have from any source, from time to time, as they shall accrue; to invest and reinvest the same and all moneys that may come into their hands from the sale of any real estate, securities, or other property for the best interest of my said estate, in their judgment; to execute all deeds and papers that may be necessary for the transfer of all or any part of my said

real estate, or any other property I may die seised or possessed of; to vote upon any of my securities and hold office in any corporation in which my estate is interested, and to do any and all other acts they may deem necessary or prudent for the proper management and protection of my said estate, the same as I myself might do if living, present, and acting in their stead."

By the second subdivision of the third clause, the executors and trustees are directed "to preserve and keep my said estate together intact, except so far as is herein otherwise directed," during the continuation of the two lives in being, which measures the duration of the estate committed to the executors and trustees. The will further provides:

"(3) To allow my beloved wife, Catharine Ann Cornell, during the period of said 'two lives,' if she shall live so long, if not, during her natural life, the sole, exclusive, and uninterrupted use, occupation, and possession of my homestead property in said Rondout, in the city of Kingston, N. Y., as it is now owned, occupied, and enjoyed by me, including house, barns, outhouses, greenhouses, and connecting and contiguous lands, together with all the household furniture therein contained, including written and printed books, pictures, plate and plated ware, fixtures, ornaments, bric-a-brac, and jewelry; also all my horses, harness, carriages, and sleighs, robes, livery and barn furnishings; all of which said property, during said period, I will and direct my executors, out of the income of my estate, to keep in such repair and condition as she may direct, to pay all assessments, taxes, and water rents against said property, and insurance upon the same. (4) To pay over unto my said beloved wife, Catharine Ann, for her own sole use, benefit, and disposition, during the period of said 'two lives,' if she shall live so long, or, if not, during her natural life, ninety (90%) per cent. of the net income of my said estate, in lieu of dower, or of any rights she may have in and to any part of my estate, except as herein provided, the remaining ten (10%) per cent. to revert to my estate. * * * (8) If my said wife shall survive the 'two lives' aforesaid, then, at the expiration of the last of said 'two lives,' to pay over unto my said wife the principal of my entire estate, real, personal, and mixed, as it shall then exist, to her and her executors, administrators, heirs, and assigns forever. * *. * Seventh. I will and direct that my executors and trustees shall jointly and severally have power to hire and employ servants and agents, upon such terms and conditions as they may think best, to aid them in the management of my said estate, and to pay such servants and agents from any funds of my estate, in their discretion, for all such services by them performed."

The trustee has charged against the income account the salaries and expenses of H. C. Soop for legal services, and R. B. Jones and Edward Derrenbacher for clerical services, and the amounts paid Rogers, Ruso & Kelly and H. M. Johnson for services as stenographers, and $929.79 paid the state treasurer for taxes on wild lands; and Mrs. Cornell and Mrs. Carpenter allege that these items should be apportioned between principal and income accounts. He has also charged $200 per month, paid to himself, for services under an agreement hereinafter more fully considered to income account; and the contestants allege, in their objections to the account and first supplemental account, that this sum should not be charged against the income account, and in the objection to the second supplemental account allege that this sum should be apportioned between the principal account and the income account, and should not be wholly charged against the income account. An item of $583.28, paid Messrs. Parker & Fiero for costs and disbursements, and an item of $593.10, paid James E. Phinney, city treasurer, for certain special

assessments, are charged by the trustee against income account, and contestants allege that these two items should be wholly charged against the principal account.

As the authority of the trustee to make any of these payments is derived from the will, it becomes necessary for this court to construe this will in order to properly determine the questions herein presented. This the surrogate's court has jurisdiction to do on an accounting. Code Civ. Proc. § 2472; Garlock v. Vandevort, 128 N. Y. 374, 28 N. E. 599. The first part thereof to be considered will be the testator's phrase "net income," as hereinbefore quoted. Thomas Cornell died the possessor of an ample fortune, which he had accumulated, and over which he exercised a careful personal supervision. He was president of many large corporations, and had been for many years identified with large business interests. His estate consisted principally of improved and unimproved real estate in this city, farm, forest, and wild lands in Ulster and Greene counties, large transportation interests in the Ulster & Delaware Railroad Company, the Kaaterskill Railroad Company, the Rondout & Rhinebeck Ferry Company, and the Cornell Steamboat Company, and large banking interests in the First National Bank of Rondout, and he was prominently connected with many other business interests of magnitude and importance. He had seen this property grow up and assume the proportions that it had at the time of his death. No one knew so well as he, whose untiring industry and frugality had amassed it, its earning capacity, and the possibilities of its development. His will provides a comprehensive scheme for retaining this wealth in his own family. Almost every contingency which the ingenuity of man could foresee is fully provided for. He was an old man, and his wife was nearly or quite as old, and is now upward of 70 years of age. A will must be construed in its entirety, and effect given to what was the manifest intention of the testator. This will breathes, in almost every line, the determination of its strong-willed maker to keep his estate together until it should be turned over to its ultimate beneficiaries. His first solicitude seems to have been for an adequate provision for his wife. The $3,000 per month she is now receiving, in addition to the use and occupation of the homestead and its belongings, show how well he succeeded in that intention. After making this provision of 90 per cent. of the net income for her, he provides that the remaining 10 per cent. shall revert to his estate. With acres of land in the heart of this city, rapidly increasing in value, with the unappeasable desire to aggrandize and enlarge his estate, he makes no direction to his trustees to sell this real estate, except in their discretion. He further directs that 10 per cent. of the net income shall be added to his estate, and directs his executors and trustees to keep his estate intact. Every will, in conformity, of course, to the general rules for construction, must be determined by the intention of the testator. Measured by this standard, I must hold that by the phrase "net income" this testator meant such income as should be left after payment of all the ordinary, proper, and necessary expenses of conducting and conserving his estate, including the repairs of buildings, taxes, and salaries and wages of all necessary employés

of the estate. This testator knew that some portions of his estate yielded little or no income, while other portions yielded a large income. It was, however, for his estate as an entirety that he always provided. He was satisfied with his own investments. He gave no direction to sell any particular property, nor change any particular investment, but directed his trustee "to preserve and keep my said estate together intact," etc., giving him, however, the power to realize on investments when necessary for the estate, or when the trustee deemed it advisable.

It is urged on behalf of the widow that the testator could not have intended that all expenses for the care and preservation of the estate should be taken from the income, as that might leave the widow destitute of any income. It would seem to be a sufficient answer to that to point out the large income she is now receiving under the construction of the will adopted by the trustee and approved by this court. But there is another, and, to my mind, a more convincing, reply to that proposition. By the fifth subdivision of his will the testator provides as follows:

"Fifth. I will and direct that, in the event my said wife shall refuse to waive her right of dower, and accept under the terms of this will, that then, and in such event, my executors, after paying over unto my said wife her dower interest in my said estate, shall manage and dispose of the remainder of my estate in the manner hereinbefore directed in the event my said wife should not survive said 'two lives,' and as if she had failed to survive said 'two lives,' and had died at the date of her refusal to accept under the terms of the will."

It will thus be seen that not even solicitude for his wife's income was allowed to stand in the way of the cherished testamentary scheme the testator had evolved, and that the widow perforce must accept of the provision made for her, or take her legal dower right only. These facts may seem harsh and stern, but they flow naturally from an examination of this will. We may not know how far they may have been softened by financial benefactions prior to decease. We do know that the selection by the widow of the benefits arising from the will, rather than her statutory rights, shows that she approved the testamentary scheme, at least so far as she was concerned, and she is now enjoying the large income thus provided for her. If any portion of the principal estate is taken to pay expenses of management and conducting it, of course the principal is depleted and reduced, and the income likewise reduced. By that act, at once, the intention of the testator to not only retain his estate intact, but to augment it by the addition of 10 per cent. of the net income, is frustrated. By so doing, notwithstanding the most prudent and careful management by the trustee, and the increase in values of the real estate by the result of natural laws, the estate might easily be seriously impaired and its income steadily decreased instead of increasing as it now is, and as the testator evidently intended it should do.

The construction here adopted is supported by the case of Dannat v. Jones, 2 Dem. Sur. 602, affirmed by the general term, 37 Hun, 430, and by the court of appeals, 103 N. Y. 621. In this estate the testator, a brewer, authorized the executors to continue his business

so long as they should think it advantageous, the profits to be distributed according to a previous clause of his will. The previous clause directed that the net proceeds of the income of certain real estate and personal property should be paid to certain designated beneficiaries during their lifetime. The business was continued, and on the accounting the executors charged as disbursements against income the wages of operatives, expenses of collecting accounts, procuring discounts, for "trade raising," procuring signs, trade losses, horses lost, and tools worn out, which were allowed, and the court held that what remained was the profits of the business. It will be seen that in this case the profits of the business were to be divided, and the term "net profits" is not used. The surrogate's court held, however, that "profits" meant "net profits," and its decision was sustained by the court of appeals. This would seem not to be so strong a case as the one before me, where "net income" only is used. See, also, In re Albertson, 113 N. Y. 439, 21 N. E. 117. It must be borne in mind that the amount of this estate has been substantially ascertained, and that the debts and liabilities of Thomas Cornell have been in the main ascertained and adjusted; so that, with a few exceptions, which will be specifically referred to, the expenses and disbursements now here are not for settling the estate, but for carrying it on, and conserving it by the trustee.

Under the construction above given to this will, the objections to charging salary of H. C. Soop, R. B. Jones, and Edward Derrenbacher to income account are disallowed. Under the seventh clause of the will, hereinbefore quoted, the trustee is given power to hire and employ servants and agents, and to pay them from any funds of the estate, in his discretion. Having exercised this power by employing these parties, and having fairly exercised his discretion under the strict terms of the will by paying them from the income, it is also doubtful if any court can properly interfere with the fair exercise of that discretion. Under an agreement dated May 30, 1893, executed by this trustee, Catharine Ann Cornell, and the other parties interested, this trustee has paid to himself, from income account, for his services in and about the estate, the sum of $200 per month from May 1, 1893. That portion of the agreement under which this payment was made is as follows:

"The parties of the second part consent and agree that the party of the first part may receive and retain the further sum of $2,400 annually from the estate of Thomas Cornell as compensation for his services as executor and trustee as aforesaid, commencing May 1, 1893."

And it was further provided that this was to continue for 10 years, and that such salary and compensation should be in addition to legal fees and commissions. Objection is now made that this should not be charged against the income account, but should be apportioned between income and principal account. Certain benefits were to be had by the life beneficiary under this agreement. In the decree of this court passing and approving the accounts of this trustee to June 30, 1894, this salary of the trustee paid from the income account was allowed without objection by these contestants, as were also the benefits that Mrs. Cornell was to receive under this

agreement. So far as the record discloses, the first intimation that the trustee had that this item of his account would be questioned was when these objections were filed in this court, February 11, 1896. It is argued in the elaborate brief of the attorneys for Mrs. Cornell that the trustee, by deducting this $200 per month from the income account, in effect takes this amount direct from her income. That by so doing the trustee treats this agreement as an equitable assignment to him by the life tenant of the rents and profits of the trust, and that an agreement of that kind is absolutely void under the statute. In that contention, I think, he is in error. Mrs. Cornell, as we have seen, is not entitled to all the income of this estate, but to 90 per cent. of the net income thereof. As no objection has been made to the trustee rendering these services, Mrs. Cornell must have known he was to render the estate extra services for this extra compensation. As the value of these services is not questioned, he must be assumed to have earned the amount received, and the income of the estate to have been increased to that amount, or to some amount. If extra services were necessary, in addition to the regular employés of the trust, and this trustee did not perform them, some one else, of necessity, would, and be paid therefor from income. It may easily be that the net income of the estate was increased by these services, instead of diminished, and in that event Mrs. Cornell would be benefited, instead of injured. There is certainly no evidence to show that the net income was diminished, and upon that theory only, if at all, could the statute against assignment of income be held to apply. The rule is that statutory commissions only shall be allowed executors and trustees, but the courts have sanctioned extra payment to executors where extra services were performed. In Re Meikle (Surr.) 20 N. Y. Supp. 88, 97, the executors only agreed that one of their number for extra services to the estate should have house rent worth $30 per month. The remaining heirs (who had not agreed to such extra compensation) objected thereto, but it was allowed. In Lent v. Howard, 89 N. Y. 169, one of the executors took charge of the real estate of deceased at the request of the other executors, and managed and controlled the same. It was held that he was entitled to extra compensation therefor. In this case the will gave $1,000 to each of the executors for his services in addition to his fees. There being no question as to the value of the extra services of the trustee, and he having performed his part of the agreement with no notice shown of Mrs. Cornell's desire to withdraw her consent prior to this accounting, I hold that he is entitled to the extra compensation in accordance with the agreement, and that it is properly charged against income account.

Now, as to the wild-land back taxes paid to A. B. Colvin, state treasurer, amounting to $929.70 and $83.62. The vouchers show that these payments were for an accumulation of back taxes, and that a portion thereof had accrued prior to the death of Thomas Cornell. The trustee will separate these payments, and charge that portion of the amounts which accrued prior to that time, and the interest thereon as computed by the comptroller, to the principal estate, as that portion is a debt of the estate, and should not be paid

from income. The remainder must be charged to income account. This tax bill is against a large number of pieces of real estate, some of which are productive and some are not. There is no way by which the productiveness or the relative productiveness of certain portions of the real estate can be estimated and compared, and this court adjudge that one portion of taxes be paid from principal account, and the other from income account. Taxes of this kind, accruing subsequent to the death of Thomas Cornell, must be paid from income. The testator, by his will, treated his estate as a whole, and the trustee properly follows the same rule. In re Albertson, supra.

The objection to the payment from income of the special assessment of $593.10 to James E. Phinney, city treasurer, presents a different question. The assessment was for Union avenue sewer extension and grading and paving Chestnut and Downs streets, in the city of Kingston. The testimony is that these streets had never been paved, graded, or sewered before; that immediately after this improvement to Downs street the lots of the estate situated on that street appreciated to the extent of $100 each. The number of lots does not appear. This is a municipal assessment for a permanent improvement to the real estate. It is not at all in the nature of annually recurring taxes, nor of taxes for repairs to streets that had once been paved, graded, and sewered. Under the decisions in Peck v. Sherwood, 56 N. Y. 615, and Thomas v. Evans, 105 N. Y. 601, 611, 612, 12 N. E. 571, this assessment must be apportioned between income and principal account. The amount involved is not large, and the apportionment may be difficult, but the objection is taken, and the apportionment will have to be made by the trustee, with the aid of the Northampton tables. There is this distinction, however, between those cases and the one here: there the parties were actually life tenants in possession and remainder-men; here there is no actual life tenant. Mrs. Cornell is the life legatee of the net income, and has no title whatever to any of the real estate except the homestead; nor is there any one now who is the actual vested remainder-man. However, the remainder is fully provided for, and, no matter where it eventually alights, the legal principle of the division is not disturbed. It can easily be seen that in this estate, with many building lots situated on unimproved streets, a municipal assessment for an expensive new pavement or sewer might make a very serious inroad on the income, while the principal estate would be greatly benefited by the improvement, and its apportionment as herein provided for adjusts the burden upon the two interests in an equitable manner. See In re Housman, 4 Dem. Sur. 408, 409.

The objection to the payment from income of the bill of Parker & Fiero, attorneys in the Overbaugh ejectment case, and of Rogers, Ruso & Kelly, stenographers in the Ulster County Savings Institution case, both seem to me well taken. The first bill is for costs recovered in an unsuccessful attempt by this estate to eject Sarah B. Overbaugh from the possession of certain premises claimed by the estate, and which she was in the possession of at the time of the

death of Thomas Cornell. This was a proceeding towards ascertaining the amount of and settling the estate by the executor, and not a proceeding by the trustee to conserve it after it had come into his possession, or to preserve it from attack. The second bill was for a stenographer in attendance at the trial of an action brought against the estate upon a bond of Matthew T. Trumpbour, executed by Thomas Cornell in his lifetime. This is a proceeding to ascertain the debts and liabilities of the estate. Both of these accounts are proper and natural expenses in settling the estate, not in administering the trust created by the will. In the decree of October 31, 1893, settling the accounts of the executors, and turning the estate over to the trustee, both of these claims were provided for, and Horace G. Young, as executor, was directed to retain in his hands sufficient assets of the estate to fully provide for the result of these actions. Those bills should be charged against principal account. The trustee will credit the principal estate with 10 per cent. of the net income from the date to which the last accounting approved by the decree of this court was rendered. A decree may be handed up in accordance with this memorandum.

Ordered accordingly.