In the Matter of the Judicial Settlement of the Account of THOMAS W. USBORNE, as Executor, etc., of HARRY B. HOPSON, Deceased, Respondent.

MAUD V. HOPSON and Another, Appellants.

Fourth Department, June 30, 1925.

Executors and administrators — accounting by executor and trustee — trust for benefit of widow and children until youngest child reached majority, with provision for termination if widow failed to provide home for children — evidence does not show that widow failed to provide home — intermediate accounting instituted prior to amendment of Code of Civil Procedure in 1914 — surrogate should have reopened decree on intermediate accounting to correct mistake under Surrogate's Court Act, § 20, subd. 6 — executor acting as trustee also should keep separate accounts —" wasting assets " should be appraised before they are turned over to trustee — executor and trustee entitled to assistance of expert accountant — trustee entitled to commissions under Surrogate's Court Act, § 285 — commissions must be apportioned between capital and income — trustee not entitled to extra compensation for running business — in absence of explanation trustee chargeable with interest after termination of trust.

A trust for the benefit of the testator's widow and his children which was to terminate when the youngest child reached its majority or prior thereto in case the widow failed to maintain a home for the children, was not terminated on the ground that a home was not maintained, since the evidence shows that the widow maintained a home for the children.

It is doubtful whether the parties were concluded by an intermediate accounting instituted prior to the amendments of the Code of Civil Procedure in 1914, in respect to a mistake therein, but in any event, the surrogate who has a wide discretion under subdivision 6 of section 20 of the Surrogate's Court Act, in reopening an order or decree for the purpose of correcting errors or mistakes, should have reopened the decree on the intermediate accounting not alone to correct the alleged mistake, but to satisfy those interested that no mistake was made, if such was the fact.

An executor acting also as trustee where the functions are separate and the accounts complex should keep separate accounts of the two offices, so that it may be determined on an accounting what has been received and expended in the process of administration of each office, thereby enabling the court to determine whether or not the executor and trustee has acted legally in the performance of his duties in each office.

Where a part of the assets in the possession of an executor are " wasting assets," that is, property which may be consumed in the using, it is the duty of the executor before turning the same over to himself as trustee, to cause that property to be appraised so that the value shall be known and accounted for to the remaindermen or legatees.

Since the accounts in this case cover a multitude of items extending over a period of years, the executor and trustee is entitled to have the aid of an expert accountant.

The trustee may be allowed commissions in addition to those received as executor under section 285 of the Surrogate's Court Act, which commissions must be apportioned between capital and income, but the trustee is not entitled to extra compensation for managing a business left by the testator.

The trustee is chargeable with interest on funds in his hands since the termination of the trust, unless he can give a legal explanation why he is not liable therefor.

APPEAL by Maud V. Hopson and another from a decree of the Surrogate's Court of the county of Chautauqua, entered in the office of said Surrogate's Court on the 2d day of September, 1924, judicially settling the account of the executor.

*Wade & Ludlow* [*Charles W. Strong* of counsel], for the appellants.

*Ottaway & Munson* [*Arthur B. Ottaway* of counsel], for the respondent.

DAVIS, J.:

The will of Harry B. Hopson was duly admitted to probate in Chautauqua County Surrogate's Court April 15, 1912. While the language of the will is somewhat obscure, the parties seem to be in agreement that it provides that the real estate and the personal property remaining after due administration were devised and bequeathed to Thomas W. Usborne as trustee. The income from the trust estate was to be paid to the widow, Adelaide J. Hopson, until the youngest child should become twenty-one years of age, the trust to terminate earlier in the event that the widow remarried or if she failed to maintain the family home for the children. Further provisions required payment of fifty dollars annually to a certain church, and the expenses of an education to such of testator's sons as desired to pursue a college course, if there was sufficient income therefor. At the termination of the trust estate, the remainder was to be divided between the widow, the living children and descendants of deceased children.

The trust terminated on May 29, 1921, when the youngest child reached the age of twenty-one years. Usborne was also named executor of the will. He has rendered a final account as both executor and trustee, and this appeal is from the decree judicially settling his account. The appellants sought to establish that the trust had terminated earlier because it was alleged that the widow failed to maintain the family home. They sought to reopen an intermediate account made by the executor May 4, 1914, and judicially settled in January, 1915, on the ground that there was a material mistake therein. They also contest the present account in practically its entire scope, and in many of the items thereof.

We think the first question was properly decided by the surrogate, and that there was no forfeiture by reason of the widow's alleged

failure to maintain a home. There was a wide discretion given her in that respect; and it was a question of judgment, under the circumstances, as to the nature and character of the home to be maintained. The learned surrogate who saw and heard the witnesses was in a more favorable position than are we to pass upon the merits of this question. (*Nottingham* v. *Nottingham, No. 1,* 209 App. Div. 459, 461.)

There would seem to be an error in the balance shown by the intermediate account as compared with the sum carried over by the executor and trustee, amounting to nearly $7,000. There may be some valid explanation of this fact, but if so, we cannot discover it in the record. The surrogate has not made findings and there is nothing in the account or the decree in explanation of this discrepancy. While a surrogate is not now required to make findings of fact, he may do so. (See Code Civ. Proc. [Laws of 1880, chap. 178], § 2545; Id. § 2541, as revised by Laws of 1914, chap. 443; now Surrogate's Court Act, § 71.) In this case findings would have been greatly helpful in throwing light on the matters in controversy, and would have shown the basis of the decree.

The proceedings having been instituted prior to the taking effect of the amendments to the Code of Civil Procedure made by chapter 443 of the Laws of 1914, it is doubtful if the parties were concluded by the account in the respect challenged. (Code Civ. Proc. [Laws of 1880, chap. 178], § 2742, in effect prior to Sept. 1, 1914;* Id. § 2771, as revised by Laws of 1914, chap. 443;† *Matter of Scovill,* 88 Misc. 364; affd., 171 App. Div. 890; Jessup-Redf. Surr. [1925 ed.] § 204.) But in any event, the surrogate has a wide discretion in reopening an order or decree for the purpose of correcting errors or mistakes, and such discretion should be exercised here, not alone to correct a mistake, but to satisfy those interested that no mistake has been made, if such is the fact. (Surrogate's Court Act, § 20, subd. 6; Jessup-Redf. Surr. §§ 63, 227; *Matter of Henderson,* 157 N. Y. 423, 426; *Matter of Regan,* 167 id. 338, 343.)

The principal dispute between the parties arises over the main account filed May 4, 1922, and the supplemental accounts filed subsequently. In those Mr. Usborne has commingled his accounts as executor and trustee. In simple estates where the same person is named in both capacities, and it is difficult to determine in which capacity the official is acting, such combined accounts are often permitted. (*Matter of Slocum,* 169 N. Y. 153, 159; *Matter of Ziegler,* 218 id. 544.) But the functions are often separate and

---

* Revised by Laws of 1914, chap. 443, as Code Civ. Proc. § 2742; now Surrogate's Court Act, § 274.— [REP.

† Amd. by Laws of 1915, chap. 274; now Surrogate's Court Act, § 317.— [REP.

the duty in one capacity is distinct from that in the other. (Surrogate's Court Act, § 314, subd. 6; *Matter of Burr*, 48 Misc. 56, 62; revd. on other grounds, 118 App. Div. 482; Jessup-Redf. Surr. § 1003.) The account of the trustee is likely to be more complex (Jessup-Redf. Surr. § 1132) and under such circumstances the accounts should be separated. (Jessup-Redf. Surr. § 1007; *Bacon* v. *Bacon*, 4 Dem. 5, 13.) And it does not matter whether the same person is designated to act in both capacities, or whether the will designates him as trustee, so long as his duties in that respect are definitely imposed. (*Mee* v. *Gordon*, 187 N. Y. 400.)

The duty of the executor was to cause an inventory of the personal property to be taken, provide for payment of debts, funeral expenses and the expenses of administration, render an account of his transactions and ascertain and turn over the balance to himself as trustee. (2 Heaton Surr. [4th ed.] § 358; *Matter of Ryer*, 94 App. Div. 449; affd., 180 N. Y. 532; Jessup-Redf. Surr. § 1007.) His right to commissions as executor then become fixed. The real estate by the terms of the will passed to the trustee. (*Toronto General Trust Co.* v. *Chicago, B. & Q. R. R. Co.*, 123 N. Y. 37; *Stevens* v. *Melcher*, 152 id. 551, 567.) That with the personal estate turned over to him by the executor constituted the corpus of property which under the terms of the will the trustee was to employ in obtaining an income. He was also required to preserve the capital so that it could be divided among the legatees and devisees at the termination of the trust estate.

The real property consisted of a farm, vineyard and icehouses. The lines of business in which the testator was engaged were continued by the trustee, and his right to so manage the trust has not been questioned. The net income thus derived from the property, both real and personal, is payable to the widow. This sum is determined after payment of the expenses incurred in conducting the business and maintaining the property, the trustee's commissions and the sums payable for the other purposes provided in the trust. From this income the widow was required to pay the expenses of maintaining a home for her children. Any sum in excess of that became her individual property.

That part of the personal property consisting of live stock and farm implements was property known as "wasting assets," or "property which may be consumed in the using." It was, therefore, the duty of the executor before turning the same over to the trustee to cause it to be appraised so that the value should be known and accounted for to the remaindermen or legatees. (*Matter of Elsner*, 210 App. Div. 575, 579.) This seems to have been done.

The accounts of the executor and trustee seem greatly confused. It is impossible to tell for what purpose some of the expenditures were made; or to apportion payments between capital and income with any certainty. No vouchers are printed. There also appear to be mistakes in the account. The state of the record does not permit any intelligent audit to be made here, and we cannot tell whether certain items should be allowed or disallowed. For this condition the appellants appear to be in part to blame, for their objections are not often sharply directed to particular items.

If we may judge from general results, the trustee has performed his duties with fidelity. The property accounted for greatly exceeds in value that which originally came into his hands. Whether this represents natural increase in the value of the property, aided by wise administration, or whether it represents some accumulations from the income, we are unable to determine.

The duty of the trustee was to make necessary expenditures in conducting the business, keep the property in repair, and, as we have said, preserve the corpus of the estate for the benefit of those entitled to it when the trust terminated; and in the mean time to pay over the net income to the widow. (*Matter of Odell*, 4 N. Y. Supp. 463; *Herbert* v. *Herbert*, 57 How. Pr. 333; *Matter of Jones*, 103 N. Y. 621; *Matter of Albertson*, 113 id. 434.) The nature of the property and the necessity of conducting several lines of business for a term of years render difficult the apportionment of expenditures to capital and income accounts. It would seem that in part funds properly applicable to income had been taken to make permanent improvements. (See *Green* v. *Winter*, 1 Johns. Ch. 26.) But the decision of these matters must rest largely in the sound discretion of the surrogate after hearing the evidence. We can state only the general principles to be applied. It may be that by assent and acquiescence the parties have ratified the acts of the trustee in using income for improvements and in other respects. There appear to have been some settlement and payment between the trustee and the beneficiaries under the will, but if by these acts the parties have rendered these questions academic, we cannot determine that fact from this record.

We think that under the circumstances detailed, the accounts of the executor and trustee should be separated. The accounts covering a multitude of items and extending over a period of years, are sufficiently complex so that the executor and trustee is entitled to have the aid of an expert accountant. (Jessup-Redf. Surr. § 1019.) Apparently the trustee has had some assistance of that nature, and it is likely that with further assistance he may be able to separate and state his accounts so that they may be

perfectly clear to those now contesting them, and to any court to which they are presented.

The trustee may be allowed commissions in addition to those received as executor. (Surrogate's Court Act, § 285, as amd. by Laws of 1923, chap. 649; *Robertson* v. *de Brulatour*, 188 N. Y. 301; *Matter of Roosevelt*, 5 Redf. 601; 39 Cyc. 490.) These commissions must be apportioned between capital and income. The trustee is not entitled to extra compensation for running the business. (*Matter of Popp*, 123 App. Div. 2.) He is chargeable with interest on funds in his hands since the termination of the trust on May 29, 1921 (*Matter of Myers*, 131 N. Y. 409) unless he makes proper explanation why he is not liable therefor. (*Shuttleworth* v. *Winter*, 55 N. Y. 624; *Matter of Sexton*, 61 Misc. 569.)

We do not find it necessary to consider any of the other questions raised on this appeal.

The decree should be reversed and the matter remitted to the Chautauqua County Surrogate's Court to take and settle the separate accounts of the executor and trustee in accordance with this opinion, with costs to appellants payable out of the estate. The costs on the new accounting may be awarded in the discretion of the surrogate.

CLARK, SEARS, CROUCH and TAYLOR, JJ., concur.

Decree reversed on the law and facts and matter remitted to the Surrogate's Court to proceed in accordance with the opinion, with costs to appellants payable out of the estate.