In the Matter of the Judicial Settlement of the Account of BENJAMIN ALBERTSON et al., as Executors, etc.

De B. died in 1878, leaving a widow, but no descendants. By his will he gave his residuary estate to trustees named, in trust, to apply the rents, income and profits to "the sole use" of his wife during her life; after her death he directed his trustees to pay out of the capital of the trust estate certain legacies "and to convey, transfer and distribute the remainder of the capital" to certain persons named. He empowered the trustees "to sell the whole or any part of the real estate belonging to such trust estate." He directed that "the proceeds of such sales * * * shall be held and managed by the said trustees * * * upon the same trusts and for the same purposes and be disposed of in the same manner as such real estate would in case of no such sale." It was provided, however, that the trustees should not sell the testator's farm during the lifetime of his wife except with her consent, to be signified by her joining in the deed, and that she should be permitted to use and occupy the farm free of rent so long as she lived. He also directed the trustees during the time that his wife so used and occupied the farm to pay out of the estate "all taxes upon said farm and the expenses of keeping the buildings thereon in proper repair, and all other expenses attending the proper upholding and maintaining of the same, and also the interest upon any and all mortgages which shall be upon said farm at the time of his death." During the widow's lifetime the trustees paid the interest accruing upon a mortgage on the farm and the insurance premiums,

taxes, etc., from the income of the estate in their hands. On their accounting these charges were objected to by the executors of the widow on the ground that the items were chargeable to the capital of the estate. *Held*, untenable; that the words, "pay out of my estate" were not, in themselves, sufficient to support the construction contended for, as the other parts of the will disclosed an intention to preserve intact the *corpus* of the estate for the ultimate disposition arranged with respect thereto upon the death of the life-tenant.

To sustain a construction of a will, whereby the capital of a trust fund may be impaired by using it in payment of taxes and of interest on mortgages and in maintaining the realty used by the life-tenant, it must contain words of the most unmistakable import pointing unequivocally in that direction.

*Mem.* of decision below, 46 Hun, 566.

(Submitted March 28, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 13, 1887, which modified the decree of the surrogate of Queens county settling the accounts of Benjamin Albertson and Garret J. Garretson, as executors and trustees of John R. De Bevoise, deceased, and affirmed it as modified.

The said testator died June 5, 1878, leaving his widow, Sarah, him surviving; but no descendants. His widow died August 2, 1881. The fourth, or residuary clause of his will, is as follows, viz. :

"*Fourth.* All the rest, residue and remainder of my estate, real and personal, which I shall own at my death or of which I shall die seized or possessed, or to which at my death I shall be in any way entitled, and wheresoever situated, I give, devise and bequeath unto my friends Benjamin W. Albertson and Garret J. Garretson, and the survivor of them and the successors of such survivor. *In trust*, nevertheless, for them *during the lifetime of my wife, Sarah De Bevoise, to collect and receive the rents, issues, income and profits thereof and to apply such rents, issues and incomes and profits to the sole use of my said wife Sarah during her life.* And upon the further trust, upon the death of my said wife Sarah, to pay *out of the capital of the said trust estate*, the legacies men-

tioned in the third article of this my will, or such of said legacies as may not then have lapsed from any cause, *and to convey, transfer and distribute the remainder of the capital of said trust estate or the securities in which the same may then be invested to,* between and among my niece, Eveline De Bevoise Boice, wife of Richard Boice, and my nephews, Charles R. Hegeman, Rem. Hegeman and James Gilbert De Bevoise, and the issue of any of my said last four named niece or nephews who may have died before my said wife, and left issue who shall survive my said wife, in equal shares or proportions, *per stirpes* and not *per capita,* to be thenceforth had and held by them, their heirs, executors, administrators and assigns forever."

By the " fifth " paragraph testator empowers " *the trustees of this, my will, appointed of the estate, devised and bequeathed as aforesaid, for the use and benefit of my wife Sarah, during her life,* to sell the whole or any part of the real estate belonging to such trust estate."
*   *   *   " It is my will, and I do hereby direct, that the proceeds of such sales, and the securities in which such proceeds may be invested, shall be held and managed by the said trustees, or their successors, upon the same trust and for the same purposes, and be disposed of in the same manner as such real property would in case of no such sale by the force of the previous provisions of this, my will.   *   *   *"

By a further paragraph, a provision is made respecting his farm, which reads as follows, viz.:

" *Sixth.* It is my will that my said trustees shall not sell my farm in the town of Jamaica, whereon I now reside, under the power of sale hereinbefore given to them, during the lifetime of my said wife Sarah, except with her consent, to be signified by her joining in the execution of a deed of conveyance of the same, and that, if my said wife shall so desire, she be permitted to use and occupy said farm free of rent so long as she shall live; and I direct that my said trustees shall, during the time that my said wife shall so use and occupy

said farm, pay out of my estate from time to time, as the same shall accrue or become necessary, all taxes upon said farm, and the expenses of keeping the buildings thereon in proper repair, and all other expenses attending the proper upholding and maintaining of the same; and also the interest upon any and all mortgages which shall be upon said farm at the time of my death."

During the widow's lifetime the testator's executors paid the interest accruing upon a mortgage covering the farm, and the insurance premiums and the taxes, etc., on the same, from the income of the estate in their hands. Upon their accounting, objection was made to such portions of the account as covered such charges to the income, by the executors of the widow, Sarah, on the ground that these items were chargeable to the capital of the estate. The surrogate sustained the objection, and held the payments in question chargeable to capital account. The General Term held that these payments were chargeable to income

*Henry A. Monfort* for appellants. Ordinarily, where there is an estate for life and a remainder in fee, the life tenant is bound to pay taxes, interest upon any mortgage upon the property and the expenses of ordinary repairs; but this rule is liable to be changed by the creator of the two estates. The question is as to the intention of the testator. (*Mosely* v. *Marshall*, 22 N. Y. 200.) By the words "my estate," the testator intended the property that he should die seized of. "Estate" ordinarily signifies the *corpus* of the property. (2 Jarman on Wills [Big. ed.] *276.) A well-known rule of construction requires, in all cases, that the language of a will shall receive a construction which will give to every expression some effect, rather than one that renders any of the expressions inoperative. (2 Jarman on Wills, *842, rule 16.)

*George G. Dutcher* for respondents. The beneficial interest of the widow under the will of the testator was the right to the net rents, issues, income and profits of the trust estate.

(*Matter of Accounting of Mason*, 98 N. Y. 527 ; *Whitson* v. *Whitson*, 53 id. 479 ; *Pinckney* v. *Pinckney*, 1 Bradf. 269 ; *Bates* v. *Underhill*, 3 Red. 365 ; *Reynolds* v. *Reynolds*, 3 Dem. 84 ; *Stubbs* v. *Stubbs*, 4 Red. 170 ; *Florence* v. *Sands*, Id. 206 ; *Freeman* v. *Freeman*, Id. 211.)   By the widow's electing to retain the use and occupation of the "Homestead Farm," she was, in that respect, a life tenant.   (1 R. S. 727,. §§ 47, 48, 49 ; *De Witt* v. *Cooper*, 18 Hun, 67.)   The widow, as such life tenant, was obliged to pay the interest on mortgage, taxes, repairs, and all other expenses attending the upholding of the "Homestead Farm," unless there be some plain, unequivocal direction in the will that those charges shall be paid from the *corpus* of the estate.   (*Matter of Accounting of Mason*, 98 N. Y. 527 ; *Whitson* v. *Whitson*, 53 id. 479 ; *Mosley* v. *Marshall*, 22 id. 200 ; *De Witt* v. *Cooper*, 18 Hun, 67 ; *Parkinson* v. *Parkinson*, 2 Bradf. 77–79 ; *Lawrence* v. *Holden*, 3 id. 142 ; *Peck* v. *Sherwood*, 56 N. Y. 615 ; *Lansing* v. *Lansing*, 45 Barb. 182 ; *Deraismes* v. *Deraismes*, 72 N. Y. 154.)   The sole object to be accomplished by the "sixth" paragraph of the will was that the widow should have the right to the possession and use of the "Homestead Farm," together with the stock, etc., for life, at her option, instead of the trustees retaining the possession and control and paying the widow the net income therefrom. (1 Redfield on Wills, 483, § 4.)   The payment of the net. income to the widow during her life, as far as appears, was received by her without objection, and, therefore, with her assent and concurrence ; and she having acquiesced in such construction of the will and accepted the payments in accordance therewith, and her legal representatives never having made any objection until more than five years after her decease, they are now estopped from objecting to the same. (*In re Gerry*, 103 N. Y. 445.)   Where there is any doubt. as to the meaning and intention of the testator, the courts are always inclined to favor blood relations to that of strangers in construing ambiguous clauses in wills.   (*Quinn* v. *Hardinbrook*, 54 N. Y. 83.)

GRAY, J. To change the general rule that, as between the life tenant and the remainderman, the former is bound to pay the taxes imposed, and the interest accruing upon a mortgage, a very clear expression of such an intention on the part of the testator must be found in his will. The usual purpose of the testator in providing for a beneficial interest in a trust estate is, that the net income shall be applicable only, and that the *corpus,* or capital, of the trust estate shall remain intact until the trust shall have determined. The principle has been so long and firmly established that interest on mortgages, taxes, repairs and all those current expenses, which are fairly incidental to the maintenance of the realty used by a life tenant, are payable by him, that it should be adhered to upon all occasions, unless, in so doing, we violate a plain direction to the contrary; which, if not found in the will in so many words, yet is the only one which a fair and reasonable construction permits of our finding. What do we find in the present will which warrants our enlarging the provision of the fourth clause in favor of the widow? By that clause a trust is created, comprehending all of the residuary estate remaining, after paying debts and expenses incidental to administration; and the rents, issues, income and profits received by the trustees are to be applied to the sole use of the widow for her life. Although the direction there is not, in words, to apply the *net income,* etc., received by the trustees, the omission is supplied by the rules of construction, and net income only is applicable to the beneficiary. But, in the sixth paragraph of the will, where the right to use and occupy the Jamaica farm, free of rent, is given to the widow, so long as she lives, occur words, which the appellants insist upon as containing an unequivocal expression by testator of an intention that, pending her occupation, the trustees are to appropriate from the capital of the estate the sums required to keep down all taxes, interest, repairs, etc., upon the property. The words are : " If my said wife shall so desire, she be permitted to use and occupy said farm free of rent so long as she shall live ; and I direct that my said trustees shall, during the time that my said wife shall

so use and occupy said farm, pay out of my estate, from time to time as the same shall accrue or become necessary, all taxes upon said farm, and the expenses of keeping the buildings thereon in proper repair, and all other expenses attending the proper upholding and maintaining of the same ; and also the interest upon any and all mortgages which shall be upon said farm at the time of my death." This permission to his widow to use the farm qualified the previously given authority to sell the testator's realty, by excepting so much of it in the contingency mentioned.

In my opinion the insertion of the words " pay out of my estate " in the sixth clause, is not, in itself, sufficient to support the construction contended for by these appellants. . Such an expression is quite as consistent with the idea that the income shall be resorted to, as that the capital of the trust fund shall be diminished for the purpose. If we refer to the other parts of the will, they disclose rather an intention to preserve intact the *corpus* of the estate, for the ultimate disposition arranged with respect to the residuary estate, upon the death of the life tenant. That disposition is the transfer to his niece and nephews of so much of the capital of the trust estate as shall remain after the payment of certain legacies, given by the third clause of the will, and which are postponed in payment until the death of the widow. These words are not without importance, viz., "*to pay out of the capital of said trust estate the legacies * * * and to convey, transfer and distribute the remainder of the capital of said trust estate.*" To sustain a construction, whereby the capital might be more or less seriously impaired, by using it in the payment of taxes and of interest on the mortgage, and in maintaining the realty used by the beneficiary, we ought to find words of the most unmistakable import and pointing unequivocally in that direction. In the fifth clause the understanding of the testator that his widow should only have the use or benefit of the income of the estate seems evidenced, when he speaks of the trustees as " appointed of the estate devised and bequeathed as aforesaid for the use and benefit of my wife Sarah during her life. "

In the same clause he provides that the proceeds of any sales, made under the power conferred, " shall be held and managed by the said trustees or their successors, upon the same trust and for the same purposes and be disposed of in the same manner as such real property would in case of no such sale by the force of the previous provisions," etc.    I do not think to concede to the words in the sixth clause, " pay out of my estate," the force and meaning that appellants contend for would be consistent with the manifest plan of the will; and, unless we can find authority for such a concession by a general reading and view of the instrument, we should not allow possibly ambiguous words and expressions to change an  established rule of construction, or to defeat what seems to be elsewhere rather a different intent of the testator.

It may be said that the widow, or life tenant, in occupying the farm, would have been bound, by the general rule in such cases, to keep  down these current charges, and that these words in the sixth clause were unnecessary. That may be true and yet the force of the rule remain unaffected.   We may consider the language as surplusage, or as an instruction to the trustees.   They may have been precautionary in their use.   The fact that she would legally have been bound to pay these charges is no reason why the testator should not specifically direct his trustees to see to their payment from the revenues of the trust fund.   He had just given her the beneficial interest in the revenue from his whole estate, of which this farm was a component part.   Upon extending to her the option of using and occupying the farm, and thus withdrawing it from the control of the trustees, the testator, in directing them to pay the taxes, interest and other expenses of maintenance, merely provided against the possibility of an accumulation of such liens and of serious deterioration in value ; whether from neglect, or from any other cause, and thereby insured the preservation of his residuary estate for the ultimate purposes specified.

I think the views I have  expressed better harmonize with

the general scheme of this will and work out the more equitable result. I, therefore, advise that we affirm the judgment of the General Term, with costs to the respondent, to be paid out of the estate.

All concur.

Judgment affirmed.