In the Matter of the Judicial Settlement of the Accounts of WIL-LIAM G. TRACY and GRANT D. GREEN, as Executors of and Trustees under the Last Will and Testament of GEORGE N. KENNEDY, Deceased, Appellants.

SYRACUSE UNIVERSITY and Others, Respondents.*

*Transfer and United States war revenue taxes on an annuity — they are to be paid before any payment to the annuitant — the principal of a trust fund not trenched upon for taxes, repairs, etc.*

The full amount of the State transfer tax and of the United States war revenue tax assessed upon the present worth of an annuity bequeathed by, and which begins to accrue at the death of, a testator, should be paid from the income of the fund on which the annuity is charged before any portion of such income is paid to the annuitant; the latter is not entitled to have the amounts of such taxes divided into annual payments based upon her expectancy of life.

The courts are very chary in permitting the principal of a trust fund to be trenched upon to meet taxes, repairs or interest on liens, unless the language of the will unmistakably discloses the intention to do so.

A lawyer, who left surviving him an adopted daughter, thirty-five years of age, devised to such daughter a dwelling house owned by him and provided : " During the time my said daughter Jessie B. shall occupy my dwelling house as hereinbefore provided I direct my said executors to pay all taxes which for any purpose may be levied thereon, and that they also keep the premises in repair at the cost of and from my estate, as well also that they pay any insurance thereon."

He devised his residuary estate to his executors in trust to collect the rents, issues and profits and pay " one equal half thereof over to said Jessie B. Kennedy semi-annually for her support and maintenance as long as she shall remain

---

* This case was decided in September, 1903.

unmarried." The testator used the terms "executors" and "trustees" interchangeably.

*Held*, that the expenses incurred with respect to the building in which the daughter was given a life estate, for taxes and ordinary repairs and insurance premiums subsequent to the testator's death, were chargeable against the income arising from the entire residuary estate and not from the *corpus* of the residuary estate.

MCLENNAN, J., dissented.

APPEAL by William G. Tracy and Grant D. Green, as executors of and trustees under the last will and testament of George N. Kennedy, deceased, from so much of a decree of the Surrogate's Court of the county of Onondaga, entered in said Surrogate's Court on the 5th day of January, 1903, as directs that the taxes, repairs, etc., upon the former residence of the deceased, paid by the executors up to December 1, 1902, should be charged against the income of the personal property of the deceased instead of the principal of such personal property; also from so much of said decree as directs that all the taxes assessed under the State Transfer Tax Law and the United States War Revenue Tax Law upon the life estates created by the will of the decedent should be deducted from the income, rents, legacies and distributive shares to which each of said life tenants is entitled, before paying to them any part of the same; also from so much of said decree as directs that the whole of the State taxes of $146.34 be deducted from the annuity of James Roan before any portion of the same is paid to him.

There were no objections to the items of account filed, and the entire controversy arises over the question from what funds certain payments for taxes, etc., are to be paid.

*James G. Tracy*, for the appellants.

*John W. Church*, for the respondent Syracuse University.

*W. S. Farmer*, for the respondent Hazel Standart.

*Oliver D. Burden*, for the respondent Eunice Standart.

SPRING, J.:

By his will Judge Kennedy left in trust for his adopted daughter Jessie, who was afflicted with blindness, $80,000, to be invested by

his trustees and the income thereof paid for her maintenance and comfort during her natural life. The present value of this annuity was ascertained and the tax imposed upon it pursuant to the United States War Revenue Act (Laws of 1898, chap. 448; 30 U. S. Stat. at Large 464, § 29 *et seq.*) was $4,045.67 and that levied pursuant to the State Transfer Act was $525.27. The decree of the Surrogate's Court charged these taxes upon the income of the beneficiary to be paid before any payment thereof to her.

It is the contention of the appellants that these sums should be divided into annual payments based upon the expectancy of life of the annuitant running along for thirty years. We can discover no warrant for this disposition of the matter. Taxes are levied to meet specified municipal, State or governmental expenditures, and it is essential for the maintenance of the body politic that they should be paid promptly after their levy. Every tax law fixes the date of their maturity and contains drastic and specific provisions for their speedy enforcement. Section 222 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1897, chap. 284) provides that the tax is "a lien upon the property transferred until paid * * * and the administrators, executors and trustees of every estate so transferred shall be personally liable for such tax until its payment." Again, "all taxes imposed by this article shall be due and payable at the time of the transfer" with certain exceptions not germane to this case. The transfer under this will became effective immediately upon the death of the testator and the income began to accrue and was credited to the beneficiary from that date. Section 224 of the Tax Law provides: "Any such administrator, executor or trustee having in charge or in trust any legacy or property for distribution subject to such tax shall deduct the tax therefrom; and within thirty days therefrom shall pay over the same to the county treasurer or State Comptroller as herein provided." Even contingent estates are now chargeable with the imposition and payment of the taxes forthwith. (Laws of 1899, chap. 76, amdg. Laws of 1896, chap. 908, § 230; *Matter of Vanderbilt*, 172 N. Y. 69.)

Section 30 of the United States War Revenue Act (*supra* 465) is equally explicit in requiring the taxes levied pursuant to its provisions to be deducted before the legacies or distributive shares

chargeable with its payment are paid to those entitled. (*Knowlton* v. *Moore*, 178 U. S. 41, 67.)

In the present case serious hardship results from this rule, and that will often be so where the income is paid to a person for life or a fixed period. The adopted daughter for whose comfort the testator was so exceedingly thoughtful and solicitous might be left barren of income for the first year after his death, for the taxes levied exceeded the entire income of the general bequest to her. The war revenue tax was large and was imposed to meet the unusual expenditures of the national government, and its payment was obligatory and must be met at once. It would undoubtedly be less burdensome to the life beneficiary to have this tax extended along, but the ultimate takers have a right to insist on its payment when due, instead of being deferred until the property passes to them when the tax might remain unpaid and be deducted from the principal before the residuary beneficiaries acquire their shares.

The testator devised the use for life to his daughter of a dwelling house owned by him, and situate on the corner of Genesee and Plum streets in the city of Syracuse. By item 24 of his will he provided: "During the time my said daughter Jessie B. shall occupy my dwelling house as hereinbefore provided I direct my said executors to pay all taxes which for any purpose may be levied thereon, and that they also keep the premises in repair at the cost of and from my estate, as well, also, that they pay any insurance thereon."

By the decree of the Surrogate's Court the taxes, repairs and insurance premiums on this dwelling since the death of the testator and embodied in the account filed were charged to the income of the fund in the custody of the trustees. The appellants challenge the correctness of this deduction, contending that these charges should be deducted from time to time from the principal of the residuary estate instead of from its income.

Again we agree with the learned surrogate. By the residuary clause of the original will (item 22) the testator bequeathed "all the rest and residue of my estate" to trustees named, directing them to collect "the rents, issues and profits," and pay "one equal half thereof over to said Jessie B. Kennedy semi-annually for her sup-

port and maintenance as long as she shall remain unmarried." Disposition is then made of this portion of his estate in the event of the marriage of his daughter Jessie. His executors, who were the same persons as his trustees, are to collect and pay over as prescribed in the will "the rents, income and profits from the other half of said remaining estate, or in other words, the other half of the income from said remainder." The testator, familiar with the general rule that a life tenant must pay the current charges for taxes, ordinary repairs, etc. (*Chamberlin* v. *Gleason,* 163 N. Y. 214, 219; *Matter of Albertson,* 113 id. 434), by the direction to his executors to pay these charges out of his estate, obviously intended a departure from the principle adverted to, otherwise the direction is surplusage. We apprehend, however, that it was not his intention to impose these annual burdens, varying in amount, upon the *corpus* of his estate. He made direction for the disposition of the principal of his large estate. He was equally explicit with all his solicitude for his adopted daughter Jessie to limit her estate in his property to a certain well-defined income. The whole text of the will contravenes any intention to diminish the body of his residuary estate for any purpose, clearly not for the purpose of the payment of these annually recurring obligations. The courts are very chary in permitting the principal of a trust fund to be trenched upon to meet taxes or interest on liens or repairs, unless the language of the will unmistakably discloses the intention so to do. (*Matter of Albertson, supra; Woodward* v. *James,* 115 N. Y. 346, 360.)

In the *Albertson* case the testator by the 6th clause of his will devised the use and occupancy of a farm owned by him to his wife for life. He directed his trustees to "pay out of my estate from time to time" the taxes, expenses for repairing the buildings and the interest on the mortgage thereon. The executors paid these charges from the income of the estate and upon their accounting the same were imposed upon the capital by the decree of the Surrogate's Court. The General Term (46 Hun, 566) held that these items were properly paid by the executors from the income, which decision was sustained by the Court of Appeals. That court reasserted the two settled canons of construction that ordinarily it is the intention of the testator in creating a trust fund to keep its *corpus* intact until the termination of the trust and that expenses

FOURTH DEPARTMENT, OCTOBER TERM, 1903.       [Vol. 87.

connected with the management of the trust estate are payable by the life tenant. After commenting upon the strictness with which these principles have been adhered to by the courts, the court in giving effect to the direction to " pay out of my estate " the taxes, interest, etc., add : " Such an expression is quite as consistent with the idea that the income shall be resorted to, as that the capital of the trust fund shall be diminished for the purpose." It then succinctly states the rule as to the unwisdom of so construing the will as to permit the depletion of the body of the fund, unless the instrument plainly requires it, in this language : " To sustain a construction, whereby the capital might be more or less seriously impaired, by using it in the payment of taxes and of interest on the mortgage, and in maintaining the realty used by the beneficiary, we ought to find words of the most unmistakable import and pointing unequivocally in that direction."

It is urged that because the testator directed his *executors* to pay these charges his intention was to have the payment chargeable to the capital of the estate. In the first place the entire estate is disposed of by the will ; the residuary estate is a trust fund and the purpose to which the income is to be applied are set forth, and the manner in which the body of the fund is eventually to be disposed of is also provided for with clearness and in detail. Again, the testator uses the terms *executors* and *trustees*, even as to this fund, interchangeably. It is all a trust fund given to designated trustees, and yet in providing for the collection and distribution of the income he uses the expression executors. The testator constituted his executors his trustees, and he apparently had in mind the men he nominated rather than the particular character which they filled in the management of his estate.

The daughter Jessie is only about thirty-five years of age, and if she should live for the time ordinarily to be expected the annual depletion of the capital would probably diminish it by one-half, if the construction urged is to prevail, before it reached those to whom it is to pass eventually. We find nothing in the will indicating that he had any such purpose, but the whole tenor of it is toward the conservation of this portion of his estate unbroken. He had made ample provision for his daughter in the trust of $80,000 which he was particular should be invested in good earning

securities.   He added to this provision by the one-half of the income of his residuary estate, but that is confined to the revenues, and the same circumspect care is manifested in its final disposition as appears concerning the other portions of his estate.

We further conclude that these current charges are to be paid from the income arising from the entire residuary estate.   The general bequests are not to await the extinction of the trust estates.   They are paid over beyond recall.   This is equally true of the trust legacy of $80,000 set apart for the daughter Jessie.   That had priority in the testator's mind over any other bequest both in its certainty of being provided for and in the character of the investments to compose it.   The executors have fulfilled his expectation in this regard by segregating certain unquestioned securities to comprise the fund designed by this bequest.   The testator did not intend these current charges to be paid solely out of the one-half of the residuary income for her benefit.   If so there was no necessity for the great particularity in providing for their payment out of the estate.   It is to be noted, also, that the entire *corpus* of the residuary estate is to compose a trust fund.   It is to be kept intact and only the income is to be paid over, the one-half to the daughter and the other half as set forth in this paragraph or item during the lifetime of Elizabeth K. Freeman.   No final distribution of the estate can be made until the death of the daughter Jessie, for the $80,000 held in trust for her benefit becomes a part of the residuary estate at her death.   The testator in his clear comprehension of the disposition he was making of his property, of the possible long continuance of the trust estate for his daughter, of the provision for the payment of the taxes and repairs in the maintenance of his residence, left this residuary estate an undivided trust fund during these years expecting that the current charges for taking care of the dwelling and other legitimate ordinary expenditures would first be paid out of the gross earnings and the net income be distributed as directed.   As a lawyer he knew that charges against these earnings would often accrue, and he left the trustees unfettered to meet them by placing this large fund under their control and united instead of separated to conform to the divisions of the profits or earnings of this residuum.

It is obvious that the testator in providing for the repairs on his premises contemplated only the ordinary repairs essential to their

preservation and maintenance, and the discussion and the decision now made are based upon that interpretation of the clause authorizing them.

The decree of the Surrogate's Court should be affirmed, with the costs and disbursements of the appellants and the respondents the Syracuse University and Eunice and Hazel Standart on this appeal to be paid out of the income of the residuary estate.

WILLIAMS and HISCOCK, JJ., concurred; McLENNAN, J., dissented, ADAMS, P. J., not voting.

Decree of Surrogate's Court affirmed, with costs of this appeal to the appellants and respondents the Syracuse University, Hazel Standart and Eunice Standart to be paid out of the income of the residuary estate.