ESTATE OF VIRGINIA I. STERN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT B. STEARNS (FORMERLY STERN), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9646, 9647. Promulgated July 29, 1927.

1. Where the trustees create an unauthorized reserve out of trust income to replace depreciated assets of the corpus, the depreciation withheld was distributable.

2. The construction placed on a State taxing statute is not authoritative in the construction of a Federal taxing statute.

*B. R. Youngman, Esq.*, for the petitioners.
*M. N. Fisher, Esq.*, and *Paul L. Peyton, Esq.*, for the respondent.

These proceedings were by agreement consolidated and involve the following deficiencies in income tax for the year 1921:

In the case of the estate of Virginia I. Stern the deficiency is $4,787.04. In the case of Robert B. Stearns, the deficiency is $559.59.

The question presented is whether certain amounts withheld from petitioners by certain trustees, in order to create a sinking fund to take care of depreciation, constitute distributable income of a trust.

FINDINGS OF FACT.

While this proceeding was pending, Virginia I. Stern died testate. Robert B. Stearns, Gustav Wertheim Van Henkelan, and Arthur H. Harlow were, on the 29th day of April, 1927, granted letters testamentary by the Surrogate's Court for the County of New York, State of New York, and such executors have been substituted as petitioners in the place of Virginia I. Stern.

Isaac Stern died in the year 1910, a resident of the City and State of New York. The pertinent parts of his will read:

SECOND: I hereby nominate, constitute and appoint my wife, VIRGINIA STERN, my son ROBERT B. STERN, and my sons-in-law, ARTHUR A. HAHLO and GUSTAV A. WERTHEIM, to be the Executrix and Executors of and Trustees under this my Last Will and Testament.

In no event shall my Executrix, Executors or Trustees or any of them be required to give or furnish any bond, undertaking or security for the performance of any of the trusts hereby delegated to them in any State or Territory of the United States or in any foreign country, either by reason of non-residence, change of residence or for any other reason, any law now existing or that may hereafter be passed to the contrary notwithstanding.

4½: I give, devise and bequeath unto my nephew FREDERICK KUGELMAN and my niece MARION KUGELMAN each the sum of Twenty-five hundred dollars.

SEVENTH: I hereby direct my Executors and Trustees to withdraw from the assets of my estate the sum of Two hundred thousand dollars and to pay One hundred thousand dollars thereof in cash to my son-in-law Arthur H. Hahlo and

One hundred thousand dollars to my son-in-law Gustav A. Wertheim so as to furnish each of my sons-in-law with capital with which to enter into business. * * *

EIGHTH : I hereby give and bequeath to the UNITED HEBREW CHARITIES in the City of New York the sum of Two Thousand dollars; to the HEBREW BENEVOLENT AND ORPHAN ASYLUM SOCIETY, in the City of New York, the sum of Two Thousand dollars ; to the EDUCATIONAL ALLIANCE, in the City of New York, the sum of Two thousand dollars; and to the HOME FOR AGED AND INFIRM HEBREWS, in the City of New York, the sum of One thousand dollars.

Having heretofore subscribed the sum of Five thousand dollars toward the Building Fund of the MONTEFIORE HOME FOR CHRONIC INVALIDS in the City of New York, on account of which a payment of One thousand dollars has been made, my Executors and Trustees are instructed to pay the balance as the same matures by the terms of the subscription.

NINTH : I give and bequeath to the MOUNT SINAI HOSPITAL, in the City of New York, the sum of Ten thousand dollars for the general purposes of the Hospital. It is my wish, but it is not made a condition of this bequest, that the said sum shall be devoted by the Hospital to the creation of the " Isaac and Virginia Stern Endowment Fund " to be applied to such purposes of the Hospital as the Directors thereof from time to time may determine.

TENTH : I give and bequeath unto my beloved wife, VIRGINIA STERN, in addition to the other bequests to her contained in this Will, and without in any way limiting or affecting the same, the sum of One million dollars, which shall be paid to her by my Executors and Trustees for her sole use and benefit, and without restriction.

THIRTEENTH : All the rest, residue and remainder of my estate, real and personal, of whatsoever kind, nature and description and wheresoever situate, I give and devise to my Executors and Trustees, hereinbefore named, upon the trust that they shall sell and dispose of the same or any part thereof in their unrestricted discretion, and shall invest, reinvest and keep invested the same in securities satisfactory to them and shall receive and collect the rents, interest, income and profit thereof and pay over one equal third part of said rents, interest, income and profits semi-annually to my beloved wife so long as she shall live, and upon the death of my wife I give and devise that portion of my estate so set apart to yield the income herein provided for her benefit, to my children and to their lawful issue then surviving in equal shares to be held for or distributed among them on the like trusts and in a like manner as is provided in the Fourteenth article hereof for their respective shares of the remaining two thirds of my residuary estate.

The provisions of this and of the Tenth and Eleventh articles of this my Will, for the benefit of my wife, are to be in lieu of dower and every other claim of my wife upon my estate and are conditioned upon the execution and delivery by my said wife to my said Executors and Trustees of effective releases of such dower within two months after this Will shall have been admitted to probate.

FOURTEENTH : My residuary estate, other than that provided to be set apart, the income of which is to be paid to my wife during her life, in the preceding article of this my Will, shall be divided into as many parts or shares as shall equal the number of my children who shall survive me, and the then deceased child or children who shall have died, leaving lawful issue him or her surviving, the lawful issue of any deceased child to have equally divided between them the share of their deceased parent.

1. Subject to the limitations and trusts in this Article contained I hereby give and devise one of said shares to each of my children then living and one

of said shares in equal parts to the issue collectively of any child that shall have died lawful issue him or her surviving.

2. The share set apart for my son shall be held by my said Executors and Trustees upon trust to invest, reinvest and keep invested the same and to receive the rents, income and profit thereof and apply the same to the use of my son so long as he shall live, and upon his death, leaving lawful issue, such trust shall cease, and the said share shall be distributed equally to and among his lawful issue, share and share alike, the issue of a deceased child taking collectively the share which would have fallen to the parent if living; provided, however, that one-half of the share set apart for my son shall, with the consent and in the discretion of my wife, if then living, be granted and paid over to him on his attaining the age of twenty-five years, or at any time thereafter, upon the death of my son without lawful issue him surviving, said share shall be distributed to and among and shall be paid over to such persons and in such proportions as he shall by his Last Will and Testament appoint, and in default of such appointment or in the event of his death before attaining the age of twenty-five years without leaving lawful issue surviving such share shall go to his then surviving sisters equally, share and share alike. If either of said sisters shall die before him, leaving issue, such issue shall take collectively the share which would have fallen to their parent if living. It is further provided that in the discretion of a majority of my then surviving Executors and Trustees other than my said son, they may at any time after my son attains the age of thirty years, grant and pay over to him all or any portion of his share so held in trust.

3. The shares set apart for my daughters respectively shall be held by my said Executors and Trustees upon separate trusts to invest, reinvest and keep invested the same and to receive the rents, income and profits thereof and apply and pay over the same annually to the use of such daughter so long as she shall live; and upon her death such share shall be equally distributed among her lawful issue then surviving, share and share alike, the issue of a deceased child taking collectively the share which would have fallen to their parent if living. In the event of her dying without lawful issue the said share shall go to her surviving brother and sister equally, share and share alike; and in the event of the death of her said brother or sister, both or either of them, before her, leaving issue, such issue shall take collectively the share which would have fallen to their parent if living.

4. Such part of the income of each child (and of the issue of any child that shall have predeceased me) as may be necessary for the care, maintenance, education and support of such child or grandchild shall be paid semi-annually for such maintenance and education, during minority, and the remainder of such income shall be accumulated during such minority.

FIFTEENTH: I hereby authorize and empower my said Executors and Trustees to sell at public or private sale and on such terms as to credit, security and otherwise, as they may determine, or to mortgage, exchange, lease, release or otherwise dispose of all or any part of my property and estate except my country residence herein specifically devised to my wife and son (which they may dispose of upon the conditions prescribed by the Eleventh paragraph hereof) and to deliver to the purchaser good and sufficient deeds, mortgages, leases, releases and other assurances therefor. I hereby further authorize and empower my Trustees in their discretion to invest from time to time the proceeds of any of my real or personal estate in productive real estate in the City of New York, such purchases, however, to be made only with the concurrence of all my Trustees then living and acting.

SIXTEENTH : My Executors and Trustees are further authorized to hold any real or personal property, stocks, bonds, securities and other interests or assets that may come into their hands as part of my estate or that they may see fit to purchase or acquire on the sale or conversion of any part of my estate, and to apportion the same, or any part thereof, in their discretion, among the trusts created by my Will, without converting the same or any part thereof into investments of the character required by law to be made by trustees, and without accountability to any of my *cestui que trust* or otherwise for the character of such investments, and with the same force and effect as though there had been apportioned in lieu thereof securities of the character in which trustees are required to invest according to the laws of the State of New York.

SEVENTEENTH : I hereby direct that the bequests contained in this my Will shall be paid whenever in the discretion of my Executors and Trustees the same can with due justice to the proper administration of my estate be paid.

The petitioner, Robert B. Stearns, is the same person as Robert B. Stern, the son of testator, mentioned in the will of Isaac Stern, and Virginia I. Stern was the widow of Isaac Stern and was the same person as Virginia Stern, named in the will. The corpus of the trust set apart to Virginia I. Stern depreciated during the year 1921 in the amount of $11,679.19, and the corpus of the trust set apart to Robert B. Stearns depreciated during the same year in the amount of $7,786.13. The executors and trustees of the will of Isaac Stern deducted from the amount due and payable to Virginia I. Stern during the year 1921 the said amount of $11,679.19, and from the amount due and payable to Robert B. Stearns during that same year said amount of $7,786.13.

OPINION.

MILLIKEN : Petitioners in their brief filed in this proceeding contend: (1) That Robert B. Stearns was entitled outright to his share of the trust; (2) that the estate of Isaac Stern was in course of administration in the year 1921; (3) that under the income-tax statute of the State of New York the petitioners were allowed to take deductions to the extent of the amount reserved by the executors and trustees; and (4) that the amounts reserved by the trustees were not distributable to petitioners under the terms of the will of Isaac Stern, and therefore, were not taxable to them.

The first three contentions made may be disposed of briefly. With respect to the contention that Robert B. Stearns was entitled to his share outright, it may be pointed out that under the fourteenth clause of the will of his father he was entitled at the age of twenty-five years to have one-half of his share paid to him, provided his mother consented thereto, and that he was entitled to have the whole of his share paid over to him at the age of thirty years if a majority of the trustees other than himself in their discretion so decided. There is nothing in the record which indicates that either of these

events has happened. On the other hand, petitioner Robert B. Stearns in his petition states that he "is one of the beneficiaries under a trust created by the will of the late Isaac Stern * * *." Until the corpus of the share of Robert B. Stearns is paid over to him in accordance with the provisions of the will of his father, it remains a part of the corpus of the trust and devolves on his death as provided in the will. Until so paid Robert B. Stearns has only an equitable life estate in the corpus.

There is nothing in the record from which it can be inferred that the estate of Isaac Stern was still in course of administration in the year 1921. The testator died in 1910 and every inference is that his estate has been settled and the corpus of the trust turned over to the trustees, who were the same persons as the executors, long prior to 1921. As above pointed out, Robert B. Stearns referred to himself as the beneficiary of a trust created in his favor and not as a beneficiary of an estate in process of administration. The petition of Virginia I. Stern contains the same allegation. We can decide this proceeding only upon the facts found in the record.

The construction placed on a state taxing statute is not authoritative in the construction of a Federal taxing statute, and therefore the action taken by the New York authorities with reference to the taxation of the income of this petitioner has no bearing on the question presented. Compare *Florida* v. *Mellon*, 273 U. S. 12, decided by the Supreme Court January 3, 1927, and *J. Percival Smith*, 6 B. T. A. 911.

This brings us to the last and controlling contention, which is, that so much of the income as was withheld by the trustees was not distributable to the petitioners and therefore not taxable to them. At the outset it is well to point out that the petitioners err when they state in their brief that it was stipulated at the hearing that "the depreciation reserve set up by the executors was withheld from the beneficiaries and was not distributed nor distributable to them under the will." No stipulation is found in the record to the effect that this reserve was not distributable under the will of Isaac Stern. This is the question which is in issue in this case. The facts stipulated are correctly and fully stated in the findings of fact.

In this case petitioners refer to the seventeenth clause of the will of Isaac Stern and contend that under this provision the income of the trust was distributable at the discretion of the trustees. It is only necessary to point out that this clause relates solely to the payment of "bequests" and has no bearing on the payment of income arising from the trusts created by the will. This income the testator directs shall be paid annually in some cases, and semi-annually in others. As to the income payable to Robert B. Stearns, the mandatory direc-

tion is that the trustees apply all the rent, income and profits to his use. The only reason advanced by petitioners why the amounts retained by the trustees and which are in issue in this proceeding should not be returned by them as income is the contention that the trustees had the right to retain this sum in order to rebuild such structures as might by lapse of time or use become valueless through depreciation.

Section 219 of the Revenue Act of 1921 in part provides:

(a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

*        *        *        *        *        *        *

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct. * * * .

*        *        *        *        *        *        *

(d) In cases under paragraph (4) of subdivision (a), and in the case of any income of an estate during the period of administration or settlement permitted by subdivision (c) to be deducted from the net income upon which tax is to be paid by the fiduciary, the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not, or if his taxable year is different from that of the estate or trust, then there shall be included in computing his net income his distributive share of the income of the estate or trust for its taxable year ending within the taxable year of the beneficiary. * * *

Section 219 of the Revenue Act of 1918 was construed in *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; 5 Am. Fed. Tax Rep. 5230. This decision is applicable to section 219 of the Revenue Act of 1921. See *Arthur H. Fleming*, 6 B. T. A. 900. In the *Baltzell* case it was said:

In considering Section 219 alone and apart from the other sections of the act, it is evident that in it Congress employed words which lead to confusion of thought. It states under subdivision (d) that the income under paragraph 4 on which the tax is to be assessed and collected shall be " his distributive share, whether distributed or not, of the net income of the estate or trust for the taxable year." The beneficiary clearly has no distributive share in the net income of the estate or trust; but he has a distributive share of income to be paid him under and in accordance with the terms of the trust, and resort must be had to them to ascertain his proportion of the income or his distributive share. The beneficiary is not interested in the capital of the trust, but only in the income. If there are accretions to the capital, these are not distributable as income, so that the beneficiary may receive any part of them; and if there are capital losses they cannot be made good out of the income. The capital may be depleted by such losses; but the income for that taxable year is not. It may in future years be diminished because of the diminution of the capital.

We must therefore look to the will of Isaac Stern to discover what was the distributable share of income of each petitioner. The thirteenth clause of the will directs the executors and trustees to " receive and collect the rents, interest, income and profit thereof and pay over one equal third part of said rents, interest, income

and profits semi-annually to my beloved wife so long as she shall live * * *." The fourteenth clause directs the executors and trustees " to receive the rents, income and profit thereof and apply the same to the use of my son so long as he shall live * * *." A careful reading of the will as a whole discloses no provision which directs the trustees to provide a sinking fund to rebuild structures which have become valueless by reason of depreciation. In the absence of such a direction the trustees were governed by the rule applicable to ordinary trustees. That rule is thus stated in *Stevens* v. *Melcher*, 152 N. Y. 551; 46 N. E. 965.

> Ordinarily the duty devolves upon tenants in common in possession, life tenants, or trustees for equitable life tenants, of preserving the premises, defraying the expenses of ordinary repairs, and of paying the taxes and the accruing interest upon mortgages which may incumber the premises. *In re Albertson*, 113 N. Y. 434, 439, 21 N. E. 117.

If a house becomes so valueless that in the judgment of the trustees it should be torn down and rebuilt, the cost of rebuilding is an expenditure chargeable to capital. *Stevens* v. *Melcher*, *supra*. No case has been cited to us where in a situation like this a trustee has been permitted to set up a sinking fund to take care of depreciation and in our research we have found only two cases in which this question is involved. These cases are *In re Chapman*, 66 N. Y. S. 235, and *Smith* v. *Keteltas*, 70 N. Y. S. 1065. In the first case an executor had set up such a sinking fund and his action was disapproved. In the second case a trustee had used certain funds in the building of new houses on lots on which houses had been torn down because they had become worthless by reason of depreciation. A remainderman contended, among other things, that the trustees should have set up a sinking fund to meet this very event. This contention was denied. So it becomes apparent that the amounts set aside in this case by the trustees were parts of the shares of income which should have been distributed to petitioners. The fact that the trustees for family reasons desired to provide this sinking fund, has no effect on the taxability of these amounts to petitioners. These amounts were distributable under the will of Isaac Stern and are taxable to them " whether distributed or not." The only material difference between the facts of this case and the facts in *Arthur H. Fleming*, *supra*, is that in this case the amounts representing depreciation were reserved by the trustees and in that case they were paid to the beneficiaries. As we have pointed out, the action of the trustees in this respect was in excess of the authority conferred upon them by the will of Isaac Stern, and, therefore, the case falls within the rule laid down in the *Fleming* case.

Reviewed by the Board.

*Judgment will be entered for the respondent.*