## In the Matter of the Estate of CLARA OETINGER, Deceased.

Surrogate's Court, Erie County, October 27, 1943.

*Morey C. Bartholomew* and *Kent Christy* for Otto Oetinger.

*Abraham Wittman* for Alvin H. Oetinger, as administrator of the estate of Clara Oetinger, deceased.

VANDERMEULEN, S. The above-named decedent was the third wife of Gottlob Oetinger. He died intestate on January 1, 1921. He was survived by his widow, Clara Oetinger; three children of his first wife, namely, Alvina Simon, Otto Oetinger and Nora McSeaton; and Alvin H. Oetinger, issue of himself and the above-named decedent.

The premises commonly known as 244 and 249 Howard Street, Buffalo, New York, were owned by him and his third wife during his lifetime as tenants by the entirety. After his death, and on or about August 22, 1938, the widow by deed, dated and recorded in the Erie County Clerk's Office in Liber 2805 of Deeds, at page 23, conveyed premises known as 244 Howard Street, Buffalo, New York, to her son, Alvin H. Oetinger and her stepchildren, Alvina Simon and Otto Oetinger as tenants in common. There was incorporated in said deed the following: "Reserving unto the party of the first part herein an estate for the term of her natural life in the premises above described."

The premises known as 249 Howard Street, Buffalo, New York, were conveyed by her in 1921 to her stepchildren, Otto

Oetinger and Alvina Simon by deed containing a similar reservation.

Clara Oetinger died intestate July 8, 1941, and letters of administration of her estate were issued to her sole distributee, Alvin H. Oetinger, on July 15, 1941. At this time, Alvina Simon was collecting the rents of both premises as agent for her stepmother, and subsequently she continued to collect them. There is unpaid the city tax of 1941-42 and several assessments on both parcels of real estate, amounting to $207.42. The rents collected by her aggregated $75.50 for the month of July, which it is conceded, pursuant to section 204 of the Surrogate's Court Act and section 275-a of the Real Property Law, are to be apportioned between the remaindermen and the estate of the life tenant, according to the date of her death.

Otto Oetinger and Mrs. Simon have presented verified claims to the administrator for the taxes, less the portion of rent accrued to the date of decedent's death. This court has been informed that Mrs. Simon has withdrawn her claim. The first named filed a petition to compel payment of his claim, seeking in the case of 244 Howard Street one third, and in the case of 249 Howard Street, one half, of the unpaid taxes hereinbefore set forth, minus $9.74, the prorated amount of the rent.

The common-law rule is undoubtedly that taxes must be paid by the life tenant.

Section 204 of the Surrogate's Court Act provides in part as follows: " All rents reserved on any lease made after June seventh, eighteen hundred and seventy-five, and all annuities, dividends and other payments of every description made payable or becoming due at fixed periods under any instrument executed after such date, or, being a last will and testament that takes effect after such date, shall be apportioned so that on the death of any person interested in such rents, annuities, dividends or other such payments, or in the estate or fund from or in respect to which the same issues or is derived, or on the termination by any other means of the interest of any such person, he or his executors, administrators or assigns, and the person who thereupon becomes entitled to such rents, annuities, dividends or other payments or the estate or fund from or in respect of which the same issues or is derived, shall each be entitled to a proportion of such rents, annuities, dividends and other payments, according to the time which shall have elapsed from the commencement or last period of payment thereof to the time of such termination as the case may be, including the day of such death or of such termination,

after making allowance and deductions on account of charges on such rents, annuities, dividends and other payments."

In *Matter of Juilliard* (238 N. Y. 499) it was stated: " The statute changed the common law rule which determined how far fixed income made payable or becoming due after the termination by death of an interest or estate in the fund, from which the income was derived, is an incident of that interest or estate, * * *."

One question involved in this controversy appears to be whether or not the word " charges " as used in the statute includes taxes.

In Perry on Trusts (6th ed.) section 554 is found the following statement: " The ordinary taxes and expenses in the care and management of the capital are charges on the life estate to be paid out of the income ", citing a number of cases in various States, among them *Matter of Tracy* (87 App. Div. 215, 218).

In *Chamberlain* v. *Gleason* (163 N. Y. 214, 219) is found the statement implying that ordinary taxes, interest and repairs are current charges. It would therefore appear that the word " charges " includes taxes.

Undoubtedly the Legislature by the enactment of this statute intended a change in the common-law rule that in many cases caused an inequitable result. In attempting to effect this, it is inconceivable that the Legislature intended to apportion income between the life tenant and the remaindermen and at the same time leave the burden of the taxes on the estate of the life tenant for a period of time during which it would receive no benefit.

This court is of the opinion that the Legislature intended a fair and equitable rule, calling for an apportionment of income and charges. The rents and taxes, therefore, should be apportioned in accordance with the terms of the statute.

The administrator should account, and the decree of judicial settlement should provide for an apportionment of the rents and taxes in accordance with this decision.